**BELTZ TRAVEL SERVICE, INC.,**
**Plaintiff-Appellant,**

v.

**INTERNATIONAL AIR TRANSPORT ASSOCIATION and United Air Lines, Inc., Defendants-Appellees.**

**No. 74–2609.**

United States Court of Appeals, Ninth Circuit.

March 20, 1980.

Rehearing Denied June 30, 1980.

Thomas G. Wood, San Francisco, Cal., for plaintiff-appellant.

E. Judge Elderkin, San Francisco, Cal., for defendants-appellees.

Before BROWNING and HUG, Circuit Judges, and HOFFMAN *, District Judge.

HUG, Circuit Judge:

Beltz Travel Service, Inc., a travel agency primarily engaged in packaging vacation tours, brought this action for treble damages against three groups of defendants for their alleged violations of the antitrust laws. The first group of defendants consisted of five airlines, Pan American World Airways, Inc., Trans World Airlines, Inc., Western Air Lines, Inc., Continental Air Lines, Inc., and Air France. These five airlines, which we shall refer to as airline tour operators, are alleged to have entered the tour packaging market and to have used predatory tactics to take over and monopolize the tour packaging market in California, in violation of sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2. The claims against these defendants were not dismissed; they remain before the trial court and thus are not before us in this appeal.

The second group of defendants was composed of two airline trade associations, the Air Transport Association of America (ATAA), an association of domestic airlines, and the International Air Transport Association (IATA), an association of international airlines. The third group of named defendants encompassed all of the individual airline members of these two associations. The only airlines in this category that were served with process were American Airlines, Inc. and United Airlines, Inc.

The two airline associations and their members were alleged to have conspired with the five airline tour operators to take over the tour packaging market in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. The district court granted a partial summary judgment in favor of the two airline associations and their members. The order was certified as a final judgment pursuant to Fed.R.Civ.P. 54(b), and Beltz appealed. The appeal from the judgment in favor of ATAA and American Airlines, Inc. has been dismissed. Thus, the only remaining appellees are IATA and its member airline, United Airlines, Inc. (United).

## FACTS

Beltz was engaged in business as a tour operator for the thirteen years preceding October 31, 1973. The principal business of Beltz was the sale of travel tour packages to destinations outside the continental United States. These tour packages consisted of two major elements: the transportation to and from the destination; and the necessary "ground services" at the destination, including hotel reservations, ground transportation, guide and sightseeing services,

---

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

and baggage handling. An integral part of this business was the ability to write and issue airline tickets.

The relationship between travel agents, such as Beltz, and the airlines was governed by numerous inter-airline agreements. Dealings with domestic airlines were controlled by resolutions of the Air Traffic Conference (ATC), which is a division of ATAA. Dealings with international carriers were regulated by a similar set of resolutions administered and enforced by IATA. These resolutions contained detailed provisions establishing the basis upon which member airlines could do business with a travel agent and the circumstances under which the airlines were required to terminate their relationship with the agent. The resolutions required the travel agents to render a report of all ticket sales and remit the proceeds to a designated bank every ten days.

In October, 1973, Beltz failed to file a report and make remittance for a ten-day period, for its San Jose agency. This omission brought into operation ATC Agency Resolution 80.10, which provided that upon notice of a travel agent's failure to report and remit, ATC was required to notify each of its member airlines and IATA of the failure, and to notify the travel agent immediately to stop selling air transportation and surrender all ticket forms and airline identification plates. After ATC notified IATA of Beltz's default, the Resolution 810a procedures of IATA also became operative, and Beltz's authority to write and issue airline tickets was withdrawn by IATA as well.[1] All the required procedures were substantially followed in the termination of Beltz's authority.[2]

Beltz filed this action, claiming that its failure to report and remit was the result of the conspiracy of the airline tour operators and appellees to drive it out of business. More specifically, Beltz alleged that in furtherance of the conspiracy, the airline tour operators, by granting price discounts, encouraged independent tour operators, such as Beltz, to expand their businesses preparatory to an appropriation of this business by the airline tour operators; that the airline tour operators then coerced ground operators and travel agents to refuse to deal with independent tour operators like Beltz, and to deal instead with the airline tour operators; that the airline tour operators appropriated the business contacts, methods, and know-how of the independent tour operators; and that the airline tour operators engaged in price-cutting by subsidizing their tour business with revenues from other holdings.

The appellees are alleged to have known about and conspired in the airline tour operators' plan to eliminate Beltz and other independent tour operators. Beltz claims that the airline tour operators withheld sums owed to Beltz knowing that Beltz would be forced to borrow against the ticket collections it was required to remit to the airlines; that this borrowing would put Beltz in default under the agreement administered by the associations, triggering the termination of Beltz's ticketing authority and eliminating Beltz as a competitor; and that the appellees were members of

---

1. The pertinent portion of Resolution 810a provides:

(6) . . . [U]pon notification by the Air Traffic Conference of America that an IATA Passenger Sales Agent has failed to remit monies due and is in default according to its rules, the Agency Administrator shall immediately so advise all IATA Members and members of the Agency Administration Board. Thereafter the procedure shall be as in Paragraph (8) below.

     \*    \*    \*    \*    \*    \*

Action by Members Upon Notice of Default
(8) On receipt of the advice from the Agency Administrator referred to in [Paragraph] . . (6) . . . above:

(a) each IATA Member dealing with the defaulting Agent shall immediately discontinue credit, withdraw all tickets, miscellaneous charges, orders and exchange order forms supplied to such Agent and revoke any authorization given to the Agent to draw its own exchange orders on such Member . . . .

2. Beltz asserts that the appellees deviated slightly from the procedural requirements of the resolutions, and thus immunity should not attach. Because of our resolution of the case, we do not address this issue.

this conspiracy to drive Beltz out of business.

## DISCUSSION

United and IATA filed a joint motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6). The trial judge treated the motion as a motion for summary judgment under Fed. R.Civ.P. 56. All of the resolutions governing the relationships between Beltz and the appellees had been submitted to, and approved by orders of, the Civil Aeronautics Board (CAB), as required by section 412 of the Federal Aviation Act of 1958, 49 U.S.C. § 1382.[3] The district judge found that the appellees were immune from antitrust liability for action taken pursuant to the CAB-approved resolutions, by reason of section 414 of the Act, 49 U.S.C. § 1384, which grants immunity from antitrust liability for actions authorized or approved by the CAB,[4] and he granted the motion for summary judgment.

### I.  *Standard of Review*

▇▇▇ It is axiomatic that the moving party on a Rule 56 motion has the burden of showing the absence of any genuine issue of

material fact. *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 438–39 (9th Cir. 1979); *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620, 624 (9th Cir. 1977). "A material issue is one which may affect the outcome of the litigation." *Id.* We view the evidence and the inferences which may be drawn therefrom in the light most favorable to the nonmoving party. *Catalano, Inc. v. Target Sales, Inc.*, 605 F.2d 1097, 1101 (9th Cir. 1979); *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 683 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976).

▇▇▇ In antitrust cases, these general standards are applied even more stringently and summary judgments granted more sparingly. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Catalano, Inc. v. Target Sales, Inc.*, 605 F.2d at 1101; *Solinger v. A&M Records, Inc.*, 586 F.2d 1304, 1309 (9th Cir. 1978) *cert. denied*, 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979). The Supreme Court stated in *Poller* that:

3. At all times relevant to this appeal 49 U.S.C. § 1382 provided:

> (a) Every air carrier shall file with the Board a true copy, or, if oral, a true and complete memorandum, of every contract or agreement (whether enforceable by provisions for liquidated damages, penalties, bonds, or otherwise) affecting air transportation and in force on the effective date of this section or hereafter entered into, or any modification or cancellation thereof, between such air carrier and any other air carrier, foreign air carrier, or other carrier for pooling or apportioning earnings, losses, traffic, service, or equipment, or relating to the establishment of transportation rates, fares, charges, or classifications, or for preserving and improving safety, economy, and efficiency of operation, or for controlling, regulating, preventing, or otherwise eliminating destructive, oppressive, or wasteful competition, or for regulating stops, schedules, and character of service, or for other cooperative working arrangements.
> (b) The Board shall by order disapprove any such contract or agreement, whether or not previously approved by it, that it finds to be adverse to the public interest, or in violation of this chapter, and shall by order approve any such contract or agreement, or any

> modification or cancellation thereof, that it does not find to be adverse to the public interest, or in violation of this chapter; except that the Board may not approve any contract or agreement between an air carrier not directly engaged in the operation of aircraft in air transportation and a common carrier subject to the Interstate Commerce Act, as amended, governing the compensation to be received by such common carrier for transportation services performed by it.

The subsequent amendments to the statute have no direct bearing on this litigation.

4. At all times relevant to this appeal, 49 U.S.C. § 1384 provided:

> Any person affected by any order made under [section] . . . 1382 of this title shall be, and is hereby, relieved from the operations of the "antitrust laws", as designated in section 12 of Title 15, and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order.

This statute has likewise been amended, but the amendments have no bearing on this case.

We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.

368 U.S. at 473, 82 S.Ct. at 491 (footnote omitted).

■ The complaint in the present case alleged in Counts Two, Three, and Four, that in violation of section 1 of the Sherman Act:

All defendants [including the appellees] have engaged in a *combination* and *conspiracy* in unreasonable restraint of . . interstate and foreign trade and commerce. . . . Said combination and conspiracy consists of a continuing *agreement, understanding and concert of action* among defendants. . . . (emphasis added).

The complaint alleged numerous acts of the airline tour operators which led finally to the termination of Beltz's authority to write and issue tickets. The complaint further alleged that the appellees were not only members of this conspiracy, but also that they acted in furtherance of the conspiracy's goal of driving Beltz out of the tour operator business when they terminated Beltz's ticketing authority, after agreeing with the other defendants to do so. Construing the complaint liberally, *see Walker Distributing Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 3–4 (9th Cir. 1963), we conclude that a claim of a conspiracy to eliminate independent tour operators while attempting to monopolize the tour packaging industry in California is one upon which relief could be granted under section 1 of the Sherman Act. Beltz has alleged: 1) an agreement among two or more distinct business entities; 2) which was intended to harm or unreasonably restrain competition; and 3) which has actually caused injury. *See Kaplan v. Burroughs Corp.*, 611 F.2d 286, 290 (9th Cir. 1979).

■ The claim stated against the appellees in the complaint is not founded solely upon their actions in terminating the authority of Beltz to issue airline tickets, but also upon the appellees' alleged agreement to participate in the conspiracy. The motion of the appellees for summary judgment, and the affidavits and documents filed in support thereof, do not set forth any facts negating this allegation in the complaint that appellees were a part of the overall conspiracy. The main thrust of appellees' motion is concerned with their immunity for the specific actions which they took in terminating the ticket-writing authority of Beltz. The response in opposition to the motion for summary judgment does not present any affidavits or other evidence that support the allegations of the complaint that appellees had conspired with the other defendants, including the airline tour operators, to drive Beltz out of business. Thus, the posture of the case is that there are allegations in the complaint that appellees conspired with others to drive Beltz out of business; the motion for summary judgment presents no affidavits to negate this involvement in the overall conspiracy; and the opposition to the motion presents no affidavits or other evidence that appellees were participants in the overall conspiracy.

We conclude that the appellees have failed to meet their burden under Fed.R. Civ.P. 56(c) of showing that there is "no genuine issue as to any material fact." One of the material facts which Beltz alleged in its complaint was that the appellees were members of the conspiracy. Appellees have failed to present any affidavits or other evidence denying that they were members of the alleged conspiracy. Because appellees have failed to meet their initial burden of establishing the absence of their agreement to participate in the overall conspiracy, Beltz was not required to produce suitable opposing affidavits. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–160, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970).

The complaint and Charles Beltz's affidavit set forth all the facts regarding the objectives and accomplishment of the al-

leged conspiracy, and all the actions allegedly taken in furtherance of the goals of the conspiracy. These facts and allegations are sufficient to raise the issue of whether there was an agreement or conspiracy. The actual facts bearing upon the existence of such a conspiracy and the exact involvement of the appellees, if any, are obviously better known to appellees. We note that Beltz, in its opposition to summary judgment, sought further discovery pursuant to Fed.R.Civ.P. 56(f) in order to be able to fully present its position. Such further discovery might be the only method by which the facts underlying the alleged agreement would be revealed. In light of appellees' failure adequately to show that there was no genuine issue as to the existence of an unlawful agreement or conspiracy, and viewing the extensive allegations of the complaint as to the actions of all defendants in the light most favorable to Beltz, we conclude that a genuine issue as to a material fact existed, and thus, summary judgment was improper.

II. *Immunity*

In ruling on the motions for summary judgment, the district judge stated that the principal issue before him was whether the actions taken by the appellees in the alleged overall conspiracy with the airline tour operators were immune from the provisions of the antitrust laws. He concluded that immunity did attach, because the resolutions under which Beltz was terminated were approved by the CAB pursuant to section 412 of the Act and actions taken pursuant to a section 412-approved order are immune from antitrust liability under section 414 of the Act. *See Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *McManus v. Lake Central Airlines Inc.,* 327 F.2d 212 (2d Cir.), *cert. denied,* 377 U.S. 943, 84 S.Ct. 1350, 12 L.Ed.2d 307 (1964). We do not find it necessary to consider the immunity question, for we disagree with the district judge's assumption that the only involvement of the appellees in the situation was the termination of the ticketing authority. The district judge stated:

It is emphasized that the alleged acts of the [airline] "tour operator" defendants cannot be intermingled with those of the [appellees] in determining whether immunity attaches to the latters' acts. . . . The controlling authority clearly compels the conclusion that where the only acts attributable to defendants are those required by CAB-approved agreements, and that express statutory immunity applies to such acts, an antitrust action will not lie against such defendants.

This statement assumes that the appellees were not involved in any unlawful agreement or conspiracy. The trial court considered that the only alleged involvement of the appellees in the conspiracy was their acts in terminating the ticketing authority of Beltz and found that these acts were immune because they were required by CAB-approved agreements. This overlooks the allegation in the complaint that the appellees were part of the overall conspiracy agreement. To put the matter more plainly, had the appellees sat around a table with the airline tour operators and agreed upon a course of action to drive Beltz out of business, the appellees as co-conspirators would be chargeable with the airline tour operators' acts in furtherance of that conspiracy. The appellees would not be immune from liability as co-conspirators even though the appellees' specific acts in furtherance of the conspiracy could be found to be immune.

The acts of the airline tour operators, which are not asserted to be immune from the antitrust laws in any way, must be considered as acts of the appellees when considering the possible antitrust liability of the latter. The complaint alleged that the appellees were a part of an overall conspiracy in which they knowingly and willfully participated. We therefore apply the well-established principle that "a conspiracy [is] not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Patten,* 226 U.S. 525, 544, 33 S.Ct. 141, 145, 57 L.Ed. 333 (1913); *see American Tobacco*

*Co. v. United States,* 147 F.2d 93, 106 (6th Cir. 1944), *aff'd,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). If the appellees conspired with the airline tour operators, the action of any of the conspirators to restrain or monopolize trade is, in law, the action of all. *See American Tobacco Co.,* 147 F.2d at 115. All conspirators are jointly liable for the acts of their co-conspirators. *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 253–54, 60 S.Ct. 811, 858, 84 L.Ed. 1129 (1940); *El Rancho, Inc. v. First National Bank of Nevada,* 406 F.2d 1205, 1216 (9th Cir. 1968), *cert. denied,* 396 U.S. 875, 90 S.Ct. 154, 24 L.Ed.2d 133 (1969); *Solomon v. United States,* 276 F.2d 669, 674 (6th Cir.), *cert. denied,* 364 U.S. 890, 81 S.Ct. 219, 5 L.Ed.2d 186 (1960); *Standard Oil Co. v. Moore,* 251 F.2d 188, 211 (9th Cir. 1957), *cert. denied,* 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958).

■ If Beltz can establish the existence of a conspiracy in violation of the antitrust laws and that appellees were a part of such a conspiracy, appellees will be liable for the acts of all members of the conspiracy in furtherance of the conspiracy, regardless of the nature of appellees' own actions. Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result. *See American Tobacco Co.,* 147 F.2d at 119.

[11] The immunity of appellees for their specific actions is thus not the determinant issue at this point in the case. The issue on the appeal of this summary judgment is whether appellees were members of the alleged conspiracy, for if they were, any immunity for the acts they performed could not protect them from liability for the actions, and attendant consequences, of the airline tour operators, whose actions were not immune from antitrust liability.

III. *Mootness*

■ While this appeal was before us and while the case against the airline tour operators was proceeding in the district court, the district judge granted Beltz's motion to amend its original complaint. Appellees now contend that the nature of these amendments is such that Beltz has abandoned the claims that it seeks to sustain on this appeal and therefore this appeal has been rendered moot. We disagree.

■ Generally, when a notice of appeal is filed in this court, jurisdiction is vested in this court, and the district court has no power to take any action affecting the cause. *Hoffman v. Beer Drivers & Salesmen's Local 888,* 536 F.2d 1268, 1276 (9th Cir. 1976); *Rogers v. Consolidated Rock Products Co.,* 114 F.2d 108, 110–11 (9th Cir. 1940); 9 Moore's Federal Practice ¶ 203.11, p. 734 (1975). The district court could allow Beltz to amend its complaint with respect to the defendants in the action continuing below, but this could have no effect on the claim against appellees, because jurisdiction over appellees' claim was vested in the appellate court.

In any event, we disagree with appellees' argument that Beltz has abandoned its original claim with respect to IATA and United. A careful reading of the amended complaint indicates that, in fact, Beltz has alleged with even more specificity the involvement of appellees in the overall conspiracy.

Upon remand, the original complaint against the appellees will still be in effect, and the district judge can then determine whether to allow the amendment to be effective against the appellees as well.

## CONCLUSION

We reverse the decision of the trial court holding that the conduct of the appellees was statutorily immune from the operation of the antitrust laws. We conclude that the proper focus of the case is on whether appellees were members of an unlawful conspiracy. Beltz is entitled to proceed with discovery in an attempt to establish this crucial fact.

REVERSED and REMANDED for proceedings consistent with this opinion.