**HARKINS AMUSEMENT ENTERPRISES, et al., Plaintiffs,**

v.

**GENERAL CINEMA CORPORATION, et al., Defendants.**

**No. CIV 77–736 PHX CLH.**

United States District Court, D. Arizona.

May 16, 1990.

See also 748 F.Supp. 1389.

Edwin Tobolowsky, N. Henry Simpson, Tobolowsky, Prager & Schlinger, Dallas, Tex., David N. Farren, Joseph Wm. Kruchek, Shimmel, Hill, Bishop & Gruender, P.C., William P. French, Ann A. Scott Timmer, Scult, Lazarus & French, P.A., Phoenix, Ariz., for plaintiff Harkins Amusement Enterprises, Inc.

Robert C. Hackett, David W. Dow, Thomas M. Quigley, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, Ariz., for defendant American Multi-Cinema, Inc.

Harry B. Swerdlow, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendant The Harry Nace Co.

John P. Frank, Andrew S. Gordon, Janet Napolitano, Lewis & Roca, Phoenix, Ariz., for distributor defendants United Artists Communications Theatres, Paramount, 20th Century Fox, Universal Exchanges, Warner Bros., Columbia Pictures, AVCO, MGM and MPAA.

Joel Linzner, Linda J. Margolies, Khourie, Crew & Jaeger, San Francisco, Cal., for defendant United Artists Communications, Inc.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

On December 19, 1989, by a Memorandum Opinion and Order, the Court denied defense motions for partial summary judgment on plaintiffs' circuit-wide deal allegations and commencement of the split allegations.

The defendant United Artists Theatre Circuit, Inc. ("UATC") has moved for reconsideration. The motion will be denied.

### I. *Circuit Wide Deals Claim*

UATC argues that there is no evidence to support the element of the rule of reason analysis that requires Harkins to establish that the conduct in question "actually injur[ed] or restrain[ed] competition."

■■ UATC assumed that the "conduct in question" is the three circuit-wide deals by UATC. Based on this assumption, UATC argues that a restraint upon one percent of a market (3 films out of 300) could not, as a matter of law, violate the rule of reason. However, UATC's assumption is incorrect. The conduct in question is not simply UATC's individual participation in the alleged conspiracy, but consists of the conduct of all of the defendants in the alleged conspiracy to exclude competition from the relevant market.

UATC consistently ignores the fact that Harkins' Sherman Act Section 1 claim alleges a single conspiracy to restrain trade. "Acts which are themselves legal lose that character when they become constituent elements of an unlawful scheme." *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 705, 707, 82 S.Ct. 1404, 1413, 1414–15, 8 L.Ed.2d 777 (1962). The character and effect of an alleged conspiracy is not to be judged by viewing its separate parts, but by looking at it as a whole. As the Supreme Court noted in another case involving Section 1 of the Sherman Act:

... In cases such as this, plaintiffs should be given full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. 'The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it· as a whole. [citation omitted;] and in a case like the one before us, the duty of the jury [and, therefore, of the trial judge in the case at bar] was to look at the whole picture and not merely at the individual figures in it.'

*Phillips v. Crown Central Petroleum Corp.*, 602 F.2d 616, 625 (4th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1021, 62 L.Ed.2d 756 (quoting *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. at 705, 707, 82 S.Ct. at 1413, 1414–15. *See also Beltz Travel Services, Inc. v. International Air Transport Association*, 620 F.2d 1360 (9th Cir.1980).

The elements of bid-rigging, circuit-dealing, and market splitting must be considered together in evaluating the impact of the conspiracy as a whole on competition in the relevant market. When considered as a whole, a genuine issue of material fact has been raised that the vertical participation by individual distributors in the horizontal conspiracy among the exhibitors—involving market splitting, bid rigging and circuit-wide dealing—resulting in an economically significant restraint of trade in the relevant market.

■■ However, a rule of reasoning analysis must be used to determine wheth-

er any circuit-wide deal was in furtherance of the alleged conspiracy.

To establish a cause of action for an unreasonable restraint of trade under the rule of reason, a Section 1 claimant must establish three elements: (1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain competition, and (3) which actually injures or restrains competition. *Thurman Industries v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir.1989); *Oltz v. St. Peter's Community Hospital,* 861 F.2d 1440, 1445 (9th Cir.1988). Evidence of the adverse impact of bid-rigging and market splitting would have to be taken into consideration in evaluating the adverse impact on competition and the intent to injure competition elements of the rule of reason analysis.

In the December 19 Memorandum Opinion and Order, this court conducted an analysis of the circuit dealing allegations under the rule of reason, weighing the impact of the circuit wide deals on the intrabrand and interbrand competition within the relevant markets.[1] As a vertical restraint on trade, circuit wide deals could be found to have been reasonable if they are likely to promote interbrand competition without overly restricting intrabrand competition. *Theee Movies of Tarzana v. Specific Theatres,* 828 F.2d 1395, 1399 (9th Cir.1987).

Each film, because of its unique features, is a separate brand. Consequently, interbrand competition is characterized as competition for different superior first-run films, while intrabrand competition is characterized as competition for the same superior first run film.

"[W]hen interbrand competition exists ... it provides a significant check on the exploitation of intrabrand market power because of the ability of consumers to substitute a different brand of the same product." *Continental T.V., Inc.,* 433 U.S. 36, 52 n. 19, 97 S.Ct. 2549, 2558 n. 19, 53 L.Ed.2d 568 (1977). Consequently, if the combined effect of the bid-rigging and market-splitting prevented Harkins from licensing superior first-run film, the circuit wide deals could not possibly have promoted interbrand competition since there would have been no alternative superior first-run films available for him to license.

In addition, UATC ignores the clear ruling of this court that even if the exhibitors were able to show that the circuit wide deal increased interbrand competition—the market splitting and bid rigging allegations notwithstanding—a question of fact remained as to whether this procompetitive effect might be outweighed under the Rule of Reason analysis by the fact that circuit wide deals serve to completely cut off intrabrand competition for the licensing and exhibition of the same superior, high-quality first-run motion pictures.

## II. *Commencement of the Split*

■ Finally, this court did not "misunderstand" or "fail to notice" the basis for UATC's motion to establish commencement of the split as January 1975.

While the Ninth Circuit was not specifically asked to determine the commencement of the split, they were asked to evaluate the sufficiency of the evidence on the existence of the split during the relevant damage period, 1973–1977. The evidence presented by Harkins in response to UATC's motion was the same statistical evidence relied on by the Ninth Circuit in upholding the sufficiency of the evidence of the split during the relevant damage period. The Ninth Circuit held that there was a genuine issue of material fact as to the sufficiency of the evidence on the existence of a split in Phoenix between 1973 and 1977.

The ultimate question is whether the bid-quality data and overall statistical imbalance in the licensing of first-run pictures

---

1. Intrabrand competition involves competition among sellers of the same brand of the same product; in this case, the same superior first-run motion picture. Interbrand competition involves competition between sellers of different brands of the same generic product. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 52 n. 19, 97 S.Ct. 2549, 2588 n. 19, 53 L.Ed.2d 568 (1977).

during 1973 and 1974, which was relied on by the Ninth Circuit in evaluating the sufficiency of the evidence during this period, constitutes sufficiently specific factual support of the market splitting claim so as to defeat the motion to establish the commencement of the split as January 1975 in light of the affidavits submitted by UATC.

UATC argues that the law of the case does not bar reconsideration of the sufficiency of the evidence on the circuit-wide deal claim since the exhibitor defendants never challenged the sufficiency of the evidence before the Ninth Circuit, as they were awarded summary judgment on the grounds that the distributors summary judgment award was the law of the case. UATC notes that they had entered into a stipulation which guaranteed them the right to challenge the sufficiency of plaintiffs' evidence if summary judgment against the distributors were reversed.

In making this argument, UATC ignores the exception contained within the stipulation, which provides that the agreement does not apply to issues relating to the sufficiency of the evidence that "have been previously determined in connection with the ruling on the distributor Defendant's summary judgment motions." The sufficiency of the evidence on the existence of the split between the years 1973 and 1977 was previously determined by the Ninth Circuit in reversing the distributor defendants' motions for summary judgment on the market splitting claim.

IT IS ORDERED denying the defendant United Artists Theatre Circuit, Inc.'s motion to reconsider denial of motions for partial summary judgment re: circuit dealings and commencement of split.