Joseph SOTO, Jr., et al., Plaintiffs,

v.

CITY OF SACRAMENTO, et al., Defendants.

No. Civ. S–79–680 LKK.

United States District Court,
E.D. California.

May 3, 1983.

As Amended Aug. 24, 1983.

Bolling, Walter & Gawthrop, Sacramento, Cal., for county defendants.

James J. Lynch, Jr., Sacramento, Cal., for plaintiffs.

Dianna Z. Hoffman, Johnson & Hoffman, Sacramento, Cal., for city defendants.

## MEMORANDUM AND ORDER

KARLTON, Chief Judge.

Plaintiff, JOSEPH SOTO, JR., has brought this action against defendants[1] seeking damages under 42 U.S.C. § 1983 for the deprivation of his constitutional rights. Additionally, as pendant state claims, he alleges both the intentional and negligent infliction of emotional distress. Under both his federal and state causes of action he seeks to hold defendants liable for the damages he sustained as a result of his attempted suicide. Plaintiff, IMELDA SOTO, brings this action charging the infringement of her constitutional right to a marital relationship.[2] The action is before me now on cross motions for summary judgment as to plaintiff JOSEPH SOTO's section 1983 claim.[3]

### I

### STATEMENT OF FACTS[4]

On March 14, 1978, one Ralph Talpas was attacked and robbed by three males and one female as he was crossing Plaza Park, in downtown Sacramento. Immediately after the attack, he located a telephone booth across the street from the park and called the police, giving them a description of his assailants.

---

1. For convenience, the following defendants will be referred to as "City defendants": The City of Sacramento, Police Chief Kearns, Officer Brewer, and Sergeant LaChapelle. The following defendants will be referred to as "County defendants": The County of Sacramento, Sheriff Duane Lowe, Deputy Sheriff Thomas, Deputy Sheriff Waters, Deputy Sheriff Hasapis, and Deputy Wayne Fidler.

2. Imelda Soto does not specifically state in her complaint that she seeks damages under 42 U.S.C. § 1983. Absent such a constitutional claim, her allegations could support the state law tort of loss of consortium only; since there are no federal defendants or allegations of diverse citizenship, she would have no independent basis for federal jurisdiction in this court. Under the Federal Rules of Civil Procedure, however, I am to construe a complaint liberally, in favor of the pleader, in determining whether there is a proper jurisdictional predicate. 5 Wright & Miller, *Federal Practice and Procedure:* Civil § 1350 at p. 551. I find, therefore, that she has attempted to state constitutional violations so as to invoke this court's jurisdiction under 28 U.S.C. § 1343(3). This construction of the pleadings in no sense expresses this court's opinion as to whether she has stated a claim or whether such a claim is meritorious.

3. Plaintiffs' attorney has brought this motion on behalf of both plaintiffs but makes little or no argument concerning plaintiff Imelda Soto's claim. I find, therefore, that Imelda Soto has failed to carry her initial burden on summary judgment of demonstrating that she is entitled to judgment as a matter of law and deny summary judgment on her claim. Both City and County defendants move for summary judgment as to both plaintiffs but, likewise, do not argue the merits of her claim; accordingly, summary judgment in favor of defendants is denied. The remainder of this opinion will therefore discuss only Joseph Soto's claim.

4. Because this order considers a motion for summary judgment, the statement of facts considers only the undisputed facts. Disputed facts are noted solely for the purpose of identifying them and considering in the body of the opinion whether any disputed fact is "material." "A material issue of fact is one that makes a difference in the litigation." *Kouba v. Allstate Insurance Co,* 523 F.Supp. 148, 154 (E.D.Cal.1981), *rev'd on other grounds,* 691 F.2d 873 (9th Cir.1982). For convenience, the court, during the course of explaining the factual background, refers to one or another witnesses' version of the facts. Unless the court notes that the particular version referred to is undisputed, I do so only because the particular witness' version is the most coherent statement the court could find. The court wishes to emphasize that in doing so it does not adopt that particular version as a finding. *See* n. 9.

Defendant Sergeant LaChapelle, of the Sacramento City Police Force, responded to this call approximately five minutes later; he arrived on the scene with a police dog. LaChapelle entered Plaza Park and commenced a search for Mr. Talpas' assailants. Upon doing so he saw three males and one female who appeared to match the description given by Mr. Talpas. One of them was the plaintiff. ·Plaintiff asserts, and Sergeant LaChapelle does not deny, that Sergeant LaChapelle was acquainted with him from prior contacts. The events which transpired thereafter are disputed. .

At a preliminary hearing regarding the robbery LaChapelle testified that as he approached the four suspects they started to leave, whereupon he ordered them all to stop and lie face down on the ground. After he had done so he observed plaintiff JOSEPH SOTO crouching on his haunches as though to run or jump. According to Sergeant LaChapelle, he could not see Mr. SOTO's hands and thus determine if he was armed. Accordingly, defendant testified, plaintiff was again ordered to lie down so that his hands could be seen; he was told this two more times but failed to comply.

At about this time defendant Officer Brewer arrived on the scene with his police dog. Sergeant LaChapelle asserts that he walked over to plaintiff and told him to lie down. When plaintiff remained in his crouching position, Sergeant LaChapelle pushed him down with his boot. At about the same time Officer Brewer released his dog which bit plaintiff. Once bitten, LaChapelle testified, plaintiff laid down on the ground as instructed. In due course the suspects were arrested and taken to Sacramento County Jail. Plaintiff's version of what happened in the park, as related to his

brother, Frank Soto, is decidedly different.[5] He alleges he was hiding behind some bushes when a policeman and his dog found him. He told the policeman that he was unable to get up whereupon he was ordered to stay down on the ground and to put his hands apart. Plaintiff claims he complied and was willing to give himself up; he asserts that despite these facts, the policeman released his dog and he was bitten. As noted, a preliminary hearing occurred and plaintiff was bound over for trial.

On April 20, 1978, approximately a month after the arrest, the incidents at the jail for which plaintiff also seeks compensation occurred. Plaintiff at this time was housed in Cell 3, North 1, a "tank" cell in which other detainees were present. Defendant Wayne Fidler, a commissary deputy and two trustees were making commissary rounds with a cart, containing candy and other things for sale. Here again the facts are in dispute. Defendant Fidler's version of the ensuing incident is that he saw Joseph's hand and the hand of another person (whom he could not identify) reaching through the bars of the cell for something in the tray. A trustee named Butner came up to the cell and looked at Joseph whereupon Joseph spat at Butner. Another inmate then hit Butner in the hand; another inmate was reaching for Butner, and a further disturbance ensued. Defendant Fidler removed himself, the trustees, and the commissary cart from the area and called for help.

Defendants Deputy Sheriff Waters, Deputy Sheriff Thomas, and Deputy Sheriff Hasapis responded to the call. Plaintiff alleges that there was a threat made by one of the County defendants to the effect that, if he continued acting in a disruptive man-

---

5. Because of the severe physical injuries resulting from plaintiff's attempted suicide, discussed herein, he is unable to communicate in any manner about the events in question. The plaintiff has tendered as evidence statements plaintiff made to his brother, Frank Soto, and to other deposed witnesses. The defendants have not specifically objected to this evidence. Under the circumstances it is proper for the court to consider this testimony. *See, e.g., Calhoun v. Bailar,* 626 F.2d 145 (9th Cir.), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1980). In no sense is the court ruling on the admissibility of such evidence at trial.

ner, he would be killed.[6] Plaintiff claims that after restoring order, the defendants intended to and did move him to an "isolation" cell as punishment for the disruption they believed he had caused; defendants assert that they intended to move him to another tank cell only for the calming effect it would have on him. In any event, plaintiff was told to gather his personal belongings and to accompany the defendants; it is undisputed that he complied in a quiet and cooperative manner.

It is also undisputed that after leaving the cell, plaintiff's person and belongings were searched. The County defendants claim he was searched pursuant to a standard procedure requiring that an "inmate" and his belongings are searched whenever he is moved from one cell to another. (The jailers apparently do not distinguish between pretrial detainees and convicted prisoners in this regard.) It is undisputed that defendant Hasapis and defendant Waters conducted the body search while defendant Thomas searched plaintiff's property. Defendant Thomas claims that he found a red toy balloon containing a white powdery substance which was tested and later identified as an opium derivative. Plaintiff contends that this substance was planted in his belongings by the County defendants as a "frame-up." (*See* n. 5) He was given his *Miranda* rights and arrested for possession of drugs.

Defendants claim that upon discovery of the contraband, they determined that plaintiff posed a security threat to the jail and decided to house him on the 5th floor in a single cell. Plaintiff claims this cell amounted to solitary confinement and that his confinement there was intended to punish him for his behavior.

Plaintiff discussed these incidents with his brother, Frank Soto, the evening of April 20, 1978. He expressed to Frank both anger and frustration about the drug arrest. Apparently, he thought that pending charges based on the attack of Ralph Talpas were going to be dropped. His frustration stemmed in part from his belief that the subsequent drug possession arrest would interfere with the dismissal of those charges. He also stated to his brother that he believed that County defendants had planted the drugs on him and that he had been set up. The County defendants, on the other hand, have a different view of plaintiff's emotional state. They assert that they did not observe any indications of depression or severe emotional disturbance; rather, he appeared to them to react to the events in the jail with calmness and stoicism.

It is undisputed that the next morning, April 21, 1978, at approximately 10:40 a.m., plaintiff was found hanging in his cell. One Deputy Sheriff Develin was the deputy sheriff on duty on the fifth floor where plaintiff was housed. He states that prior to the discovery of plaintiff that morning he had noticed nothing unusual. (Under the present record it is unclear as to how plaintiff was actually discovered.) It appears undisputed that plaintiff had tied a mattress cover around the ventilator cover guarding a ventilation shaft in the cell in an attempt to commit suicide. Defendants do not contest that the ventilation cover was lacking a screen or protective device which would prevent the cover from being utilized as an anchor for suicide attempts. It appears uncontroverted that other persons incarcerated in the County Jail had either attempted to or did commit suicide by using unshielded ventilator covers as anchoring devices by which to hang themselves.

Upon discovery plaintiff was immediately taken down, given cardio-pulmonary resuscitation, and removed by ambulance to a hospital. It is also undisputed that as a result of his suicide attempt plaintiff suffered severe brain damage and remains un-

---

**6.** These facts are drawn from statements made to plaintiff's brother and sister. *See* notes 4 and 5, *supra.*

able to care for himself or to communicate concerning these or any other events.

## II

### SUMMARY JUDGMENT STANDARD

The conventional standards relative to motions for summary judgment are well known. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Avila v. Travelers Insurance Co.,* 651 F.2d 658, 660 (9th Cir.1981); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980). In determining whether summary judgment is appropriate, all the evidence, and the reasonable inferences which may be drawn therefrom, must be construed in the light most favorable to the party opposing the motion. *United States v. First National Bank of Circle,* 652 F.2d 882, 887 (9th Cir. 1981); *Jones v. Halekulani Hotel, Inc.,* 557 F.2d 1308, 1310 (9th Cir.1977); *Mutual Fund Investors, Inc. v. Putnam Management Co.,* 553 F.2d 620, 624 (9th Cir.1977). In this regard, then, where an issue of fact is not susceptible to direct evidence but must be resolved by drawing an inference from circumstantial evidence, the court may not draw an inference favorable to the moving party unless no other rational inference is possible. Thus relevant issues relating to the mental state of a person, since always a matter of inferences, are peculiarly decisions for the jury and are rarely, if ever, susceptible to resolution on summary judgment. *See, e.g., Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *The White Motor Company v. United States,* 372 U.S. 253, 259, 83 S.Ct. 696, 699, 9 L.Ed.2d 738 (1963); *Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 326 (9th Cir.1982).

The moving party has the burden of establishing that the standard provided in Rule 56 is satisfied. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Beltz Travel Service, Inc. v. International Air Transport Assn,* 620 F.2d 1360, 1364 (9th Cir.1980).[7] Once the moving party presents competent evidence (in the form of affidavits or otherwise) which, if not contradicted, establishes that the movant is entitled to judgment as a matter of law, the burden of coming forward with specific contravening facts shifts to the party opposing the motion. Fed.R.Civ.P. 56(e); *Avila v. Travelers Insurance Co.,* 651 F.2d at 660; *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 63 (9th Cir.1973).[8]

If the facts set forth in the affidavits of the moving party are not contradicted by evidentiary material submitted by the opposing party, then the facts stated in mov-

---

**7.** Plaintiff asserts that there is implicit in the Sixth Amendment right to a fair trial a doctrine of res ipsa loquitur which shifts the burden of proof to defendants. He has failed to cite this court to any relevant authority. Moreover, given that in some sense section 1983 is an absolute liability statute, *see Haygood v. Younger,* 527 F.Supp. 808, 810–12 (E.D.Cal.1981), and as a general matter the doctrine of res ipsa loquitur arises in the context of negligence actions, the exact effect of plaintiff's argument is, to say the least, uncertain. The court holds that, under the circumstances of the instant case, the usual burdens of proof apply. Plaintiff must prove his case by the preponderance of the evidence before the burden shifts to defendants to rebut his case-in-chief or to raise affirmative defenses. *See generally, Guyton v. Phillips,* 532 F.Supp. 1154 (N.D.Cal.1981), regarding the action against City defendants. *See*

*Bell v. Wolfish,* 441 U.S. 520, 561–62, 99 S.Ct. 1861, 1885–1886, 60 L.Ed.2d 447 (1979), regarding the action against County defendants.

**8.** I particularly emphasize this portion of the standard to all parties; unless the moving party has presented adequate competent evidence to prevail as a matter of law, the opposing party has no duty to come forward with any evidence. Therefore, bare assertions that the opposing party will not be able to prove his case at trial, or will be unable to assert a particular defense, even if true, are insufficient to warrant a grant of summary judgment. Such assertions by the moving party must be accompanied by evidence sufficient to support judgment as a matter of law.

ant's affidavits must be accepted as true for the purpose of determining whether he has demonstrated he is entitled to judgment as a matter of law. *Avila v. Travelers Insurance Co.,* 651 F.2d at 660; *Jones v. Halekulani Hotel, Inc.,* 557 F.2d at 1310. If summary judgment is not possible, then by application of the same standards, the court "shall ... make an order specifying the facts that appear without substantial controversy.... [U]pon the trial ... the facts so specified shall be deemed established and the trial shall be conducted accordingly."[9] Fed.R.Civ.P. 56(d).

## III

### THE STATE OF THE RECORD

As a preliminary matter, I take note of the sprawling record on which the numerous, frequently ill-focused and often ill-defined arguments of the parties are based. Given this state of the record, the court has been forced to first identify what argument the parties may be making and determine whether it is supportable in the law; where relevant I have also sought to determine if there is evidence to support the assertion. In doing so I am required to begin at the beginning and initially determine whether plaintiff has stated a cause of action under his allegations. Once resolving that issue I then attempt to resolve the motion for summary judgment. In like fashion, when I turn to defendants' motions, I first attempt to ascertain what defenses apply and then attempt to resolve the defendants' motions.

IV·

### THE ELEMENTS OF A SECTION 1983 CLAIM

"By the plain terms of section 1983 two— and only two—allegations are required in order to state a cause of action under [42 U.S.C. § 1983]. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state ... law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).[10] As this court has recently held, those are also the only elements that plaintiff need prove to establish liability at trial. *Haygood v. Younger,* 527 F.Supp. 808, 822 n. 17 (E.D.Cal.1981). Of course, if plaintiff seeks damages, he bears the burden of proof both as to whether the violation of his rights caused the injury and the extent of damages as well.

Despite the simplicity of the initial analysis, lawsuits such as this tender a "complex interplay of the Constitution, statutes, and the facts which form the basis [of the] litigation." *Parratt v. Taylor,* 451 U.S. 527, 531–32, 101 S.Ct. 1908, 1910-1911, 68 L.Ed.2d 420 (1981). Once it is determined that defendants were acting under color of state law,[11] the court must nevertheless determine what federal right, if any, is at stake. In this case, so far as the court can determine, plaintiff makes no federal statutory claim (*see Consortium of Community*

---

**9.** Statement of Facts (Section I, *supra* ), unless describing a particular fact as disputed or characterizing it as a particular witness' testimony, constitutes a finding of undisputed facts. The balance of this opinion will consider, among other things, whether additional undisputed facts have emerged by virtue of this motion.

**10.** Section 1983 of 42 U.S.C. provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress...."

**11.** The defendants do not dispute that the "color of state law" requirement has been met in the instant case. It is clear that this essential element of any section 1983 case is satisfied in any event. "The defendants' conduct was engaged in under color of state law if they were clothed with the authority of the state and were purporting to act thereunder." *Marshall v. Sawyer,* 301 F.2d 639, 646 (9th Cir.1962). Here, the individual City defendants were agents of the City, acting within their responsibilities to enforce the law and to arrest persons suspected of violating the law. The individual County defendants were jailors charged with

Based Organizations v. Donovan, 530 F.Supp. 520 (E.D.Cal.1982)); thus the first task is to ascertain what federal constitutional right, if any, is at issue. Identification of the constitutional right implicated by a plaintiff's allegation is not a mere academic exercise. The evolving section 1983 jurisprudence recognizes that each constitutional right carries its own standard for violation and thus identifies the necessary elements for the cause of action. "Because each constitutional protection has its own standards, and thus the requisites for violation of each may vary, it is necessary to examine each in turn." Haygood v. Younger, 527 F.Supp. 808, 812 (E.D.Cal. 1981).

V

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. City Defendants

1. *Alleged Use of Excessive Force To Effectuate An Arrest.*

Plaintiff alleges that the City defendants used unreasonable force to arrest him thereby violating his constitutional rights and giving rise to the present action in damages. He contends, first, that the use of police dogs in effectuating arrests is unreasonable per se; he goes on to assert that the use of police dogs and Sergeant LaChapelle's conduct was, in any event, unreasonable under the circumstances. He contends that these acts deprived him of his constitutional rights in that they constitute cruel and unusual punishment in violation of the Eighth Amendment, and that they constitute the deprivation of due process in violation of the Fourteenth Amendment.

#### (a) The Law

■ Where, as here, no federal statutory right is asserted, the threshold issue to be addressed in any section 1983 lawsuit is whether a constitutional deprivation has been suffered by a plaintiff. If the harm suffered by a plaintiff is no more than the result of tortious conduct, an action under the Civil Rights Act will not lie. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Screws v. United States,* 325 U.S. 91, 109, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495 (1945). *See Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.") My initial inquiry, therefore, is whether plaintiff has alleged an injury of constitutional dimensions.

The circuits in general seem to be in agreement that the excessive use of force in making an arrest constitutes a constitutional violation which may be redressed through section 1983; there is substantial conflict, however, as to which constitutional right is infringed by the use of such force. Some courts have found the use of excessive force to be an unreasonable seizure in violation of the Fourth Amendment. *Carter v. Carlson,* 447 F.2d 358, 363 (D.C.Cir.1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), *reh'g denied,* 410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed.2d 694 (1973); *Jenkins v. Averett,* 424 F.2d 1228, 1232 (4th Cir.1970); *Davis v. Murphy,* 559 F.2d 1098, 1102 (7th Cir.1977). Others have found the use of unnecessary force to violate the Eighth Amendment. *Howell v. Cataldi,* 464 F.2d 272, 281–82 (3d Cir.1972). Still others have found Fourteenth Amendment due process violations. *Davis v. Murphy,* 559 F.2d at 1102; *United States v. Delerme,* 457 F.2d 156, 157 (3d Cir.1972).

In this circuit the courts have repeatedly recognized that the use of excessive force

the responsibility of maintaining the county jail and the prisoners therein. A city or a municipality is a "person" capable of being sued under section 1983, *Monell v. New York Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978) as is a county, *Knight v. Carlson,* 478 F.Supp. 55, 57 (E.D.Cal.1979).

by law enforcement personnel constitutes a violation of section 1983. *See MacDonald v. Musick,* 425 F.2d 373 (9th Cir.1970), *cert. denied,* 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1971); *Gill v. Manuel,* 488 F.2d 799 (9th Cir.1973); *Gillibeau v. City of Richmond,* 417 F.2d 426 (9th Cir.1969). Moreover, the circuit court has recognized that allegations of physical brutality at the hands of jail or prison officials state a claim under section 1983 apart from any state torts provided for by state law. *Allison v. California Adult Authority,* 419 F.2d 822, 823 (9th Cir.1969); *Wiltsie v. California Department of Corrections,* 406 F.2d 515, 517 (9th Cir.1968); *Dodd v. Spokane County, Washington,* 393 F.2d 330, 334 (9th Cir.1968); *Brown v. Brown,* 368 F.2d 992, 993 (9th Cir.1966). Unfortunately these cases rarely focus on which constitutional right is implicated by the allegations. *But see Cohen v. Norris,* 300 F.2d 24, 33 (9th Cir.1962) (unnecessary assault during the course of a search undertaken for improper purposes may violate the Fourth Amendment). I first turn to an ascertainment of which particular constitutional right is placed at issue by plaintiff's claim of the use of excessive force in effectuating his arrest.

(i) *The Eighth Amendment*

Plaintiff argues that the use of excessive force gives rise to a claim under the Eighth Amendment's prohibition of cruel and unusual punishment. That claim must be rejected. A claim under the Eighth Amendment arises only subsequent to conviction. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). Nonetheless, as I have noted, the courts uniformly recognize that excessive force in the course of an arrest gives rise to a section 1983 claim. It appears to this court that such allegations implicate two underlying constitutional claims, one arising under the Due Process Clause, the other under the Fourth Amendment.

(ii) *The Fourth Amendment*

The Fourth Amendment provides that "The right of the People to be secure in their persons ... against unreasonable ... seizures, shall not be violated...." An arrest, of course, is a seizure of the person. *See United States v. Watson,* 423 U.S. 411, 416, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976). Thus if the application of excessive force is "unreasonable" within the meaning of the Fourth Amendment, a constitutional violation occurs. *See Cohen v. Norris, supra.* The rationale for this assertion is succinctly articulated by the Fourth Circuit in *Jenkins v. Averett,* 424 F.2d 1228, 1231–32 (4th Cir.1970) as follows:

The constitutional right to be free from unreasonable interference by police officers is incontrovertible. The Constitution has long been interpreted to embrace security from 'arbitrary intrusion by the police.' *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1948). This concept was reaffirmed when *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), made the Fourth Amendment fully applicable to the states. It should not be forgotten that the Fourth Amendment expressly declares "the right of the people to be secure in their *persons* ... against unreasonable searches and seizures." And "this inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry v. Ohio,* 392 U.S. 1, 8–9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968).

It is likewise clear that this shield covers the individual's physical integrity. Injuries arbitrarily inflicted by the police are constitutionally cognizable and remediable. *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1941); *Stringer v. Dilger,* 313 F.2d 536 (10th Cir.1963); *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); *Jackson v. Duke,* 259 F.2d 3 (5th Cir. 1958); *Brooks v. Moss,* 242 F.Supp. 531 (W.D.S.C.1965); *Jackson v. Martin,* 261 F.Supp. 902 (N.D.Miss.1966).

(Emphasis in original). I, likewise, hold that the use of unreasonable force, that is,

force unnecessary to the pursuit of lawful law enforcement goals in effectuating arrests and securing the safety of police officers, constitutes the unreasonable "seizure" of one's person in contravention of the Fourth Amendment. In accord, *see Carter v. Carlson,* 447 F.2d 358, 363 (D.C.Cir.1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Cf. *Cohen v. Norris,* 300 F.2d 24, 33 (9th Cir.1962).

■ That the individual officers had probable cause to believe plaintiff had committed a crime and to arrest him is no defense to the assertion of this Fourth Amendment violation. Regardless of the initial propriety of the arrest, the defendants had a continuing duty to conduct it in a reasonable manner. Analogously, the Ninth Circuit has held that even where a search warrant is lawfully acquired in that it is supported by specific affidavits setting forth probable cause for a search, the search pursuant thereto may nevertheless be "unreasonable," and thus fall within the prohibitions of the Fourth Amendment because of the *manner* in which the officers executed the warrant. *VonderAhe v. Howland,* 508 F.2d 364, 370 (9th Cir.1975). To hold otherwise would be to immunize law enforcement officials from the consequences of outrageous or brutal acts inflicted in the course of an arrest because their initial acts were based on probable cause. The court concludes that plaintiff has alleged a constitutional predicate to his section 1983 action under the Fourth Amendment.

### (iii) *Due Process Simpliciter*

■ As I have noted, excessive force used in the course of an arrest does not implicate the Eighth Amendment, because until a criminal conviction is obtained pursuant to a formal adjudication " 'the state does not acquire the power to punish' " at all. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 17, 99 S.Ct. 1861, 1872 n. 17, 60 L.Ed.2d 447 (1979) (*quoting Ingraham v. Wright,* 430

U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–1413 n. 40, 51 L.Ed.2d 711 (1977) ). Accordingly, claims relating to the pretrial application of physical force are properly governed by the Due Process Clause of the Fourteenth Amendment. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In the words of the Supreme Court, such a claim alleges a violation of "the Due Process Clause simpliciter." *Parratt v. Taylor,* 451 U.S. 527, 536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); *see also Haygood v. Younger,* 527 F.Supp. 808, 812 (E.D. Cal.1981). Under this provision, "[a]fter showing that the defendants were acting under color of state law, [plaintiff] must prove:

a. That the interest deprived was constitutionally protected (i.e., life, liberty, or property);

b. That the deprivation was without due process of law; and

c. That the charged defendants subjected him, or caused him to be subjected to the deprivation."

*Haygood v. Younger,* 527 F.Supp. at 812.

■ First, I will consider whether plaintiff has alleged the deprivation of a constitutionally protected interest. It appears to the court that the use of excessive force in an arrest deprives a citizen of a liberty interest, that is, his right to be free from preconviction punishment without due process of law.

While the test for distinguishing "punishment" from legitimate governmental conduct may be "impossible to compress . . . into a sentence," *Bell v. Wolfish,* 441 U.S. at 537, 101 S.Ct. at 1913, one traditional method of determining one from the other has been described as:

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of

punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point to differing directions. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644 (1963), *cited with approval* in *Bell v. Wolfish,* 441 U.S. at 537, 101 S.Ct. at 1913. Application of these criteria to the question of excessive use of force (i.e., force in excess of that requisite to accomplish an arrest) necessarily suggests that it would constitute punishment and thus give rise to application of due process standards. That is, since one test of punishment is excessive conduct, the use of excessive force would require its condemnation as punitive.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In the instant case resolution of that question seems plain. The Supreme Court held in *Bell* that *no* punishment may precede a formal adjudgment of guilt, i.e., a criminal prosecution. It follows that the process due plaintiff in the instant case is such a formal criminal proceeding. It is of course undisputed that at the time of the arrest, plaintiff had not been afforded this process. That is, if under the applicable standards plaintiff is entitled to be free from punishment, and is nonetheless subjected to physical abuse, his liberty interest in a due process adjudication prior to punishment has been infringed upon, and he has stated a claim under section 1983.

A second liberty interest protected by the Fourteenth Amendment, closely related but distinctive, is also implicated by the facts. The Supreme Court has recognized a citizen's right "to be free from . . . unjustified intrusions on personal security" as a liberty interest. *Ingraham v. Wright,* 430 U.S. 651,

673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). *See also Kerr v. City of Chicago,* 424 F.2d 1134, 1139 (7th Cir.1970), *cert. denied,* 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1971); *Gregory v. Thompson,* 500 F.2d 59, 62 (9th Cir.1974), ("It is well established that § 1983 provides a remedy for one who has been the victim of an assault and battery at the hands of a person acting under color of state law. [citations omitted] The right violated by an assault has been described as the right to be secure in one's person, and is grounded in the due process clause of the Fourteenth Amendment. [citations omitted]"). Here again, the liberty interest requires as the process due a formal adjudication of guilt. *Ingraham v. Wright, supra. See* § VB(ii), *infra.*

■ I conclude that plaintiff in the instant case has alleged both the deprivation of a liberty interest sufficient to satisfy the first prong of the *Parratt* Due Process Simpliciter test and that this deprivation occurred without the process due.

The third inquiry under *Parratt* is causation. Causation here refers to the question of whether a given defendant deprived the plaintiff of the constitutional right and not the correlative question of whether specified damages have been suffered by virtue of being proximately caused by the defendant's violation of his rights. *See* § VII, *infra.*

■ The statute makes liable a defendant who "subjects" another or "causes" another to be subjected to a loss of a constitutional right. The meaning of "subjects or causes to be subjected to" has been defined by the Ninth Circuit in *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978) and *Arnold v. International Business Machines Corporation,* 637 F.2d 1350, 1355 (9th Cir. 1981).

In *Johnson* the circuit court held that: A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an

affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. [citation omitted] Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

*Id.* at 743–44. Thus, whether defendants' alleged wrongful conduct were acts of omission or commission, the question is whether, in traditional tort terms, the acts alleged were a proximate or legal cause of the deprivation of plaintiff's constitutional rights. *Arnold v. International Business Machines Corporation,* 637 F.2d at 1355. Foreseeability of injury to plaintiff's constitutional rights is therefore the primary inquiry in determining whether there is adequate causation to support plaintiff's claim. *Hirst v. Gertzen,* 676 F.2d 1252, 1263 (9th Cir.1982). Thus where a plaintiff alleges that a given defendant has, by his acts, proximately caused a violation of constitutional rights, a cause of action under the Due Process Clause has been stated, and where he proves that the violation was a foreseeable consequence, liability is established.

The above analysis was undertaken to provide the analytical framework to determine whether plaintiff has stated a cause of action under section 1983, for only then can a meaningful inquiry be undertaken as to whether material issues of fact exist which preclude granting plaintiff's motion for

summary judgment. That is, the inquiry as to whether a fact is material turns on the substantive law. Having ascertained the applicable law, I now turn to resolution of the motion.

### (b) *The Facts*

#### (i) *Plaintiff's Fourth Amendment Claims*

Central to plaintiff's Fourth Amendment claim is that the defendants LaChapelle and Brewer were guilty of excessive use of force in his arrest. Plaintiff also claims that Chief Kearns is liable for his failure to train his officers in the use of dogs. Finally, he claims the City is liable for permitting the use of dogs as a custom or usage. *See Monell v. New York Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Thus both Chief Kearns' and the City's liability, if any, turns initially on whether LaChapelle and Brewer are liable.[12] Brewer and LaChapelle's liability, in turn, is dependent upon whether excessive use of force occurred during the course of the arrest. Accordingly, then, plaintiff's summary judgment motion could only be granted if plaintiff had demonstrated that no material issue of fact was tendered as to those issues. For reasons that are almost self-evident plaintiff's motion cannot be granted.

Even if it were the case that a substantial dispute as to the events surrounding the arrest were not contested (clearly not the case, *see* Statement of Facts, § I, *supra*), summary judgment would not be appropriate. The question would then be whether, under those facts, the force used was "reasonable." It is a commonplace of federal practice that questions of reasonableness are factual determinations to be made by the jury and thus inappropriate for disposition by the court on summary judgment. *See Wilcher v. Curley,*

---

**12.** Though this appears at first blush to be a claim for a form of respondeat superior liability prohibited by *Monell,* it is not. Both the chief's liability, if any, and the City's liability under the facts relating to the arrest, if any, turn on their own acts or omissions, but those acts and omissions are irrelevant if there was no violation of plaintiff's constitutional rights during the course of the arrest.

519 F.Supp. 1, 7 (D.C.Md.1980); *Durkin v. Bristol Township,* 88 F.R.D. 613, 617 (D.C. Penn.1980); *Simms v. Reiner,* 419 F.Supp. 468, 475 (D.C.Ill.1976); and *West v. Wheatley,* 313 F.Supp. 656, 659 (D.C.Del.1970).

Plaintiff argues that Sergeant LaChapelle's previous acquaintance with him and the fact that LaChapelle had never known him to use a gun establishes the unreasonableness of his conduct. Defendants do not dispute these two factual predicates. Nevertheless, I cannot say these facts make Sergeant LaChapelle's actions unreasonable as a matter of law. There are other possible inferences to be drawn from this set of undisputed facts; under the summary judgment standard I am required to draw all reasonable inferences in favor of City defendants. *United States v. First National Bank of Circle,* 652 F.2d 882, 887 (9th Cir. 1981). For instance, a jury could easily decide that plaintiff's failure to possess a gun previously did not necessarily preclude defendant from fearing that he possessed one on March 14, 1978, and thus find his actions under those circumstances reasonable. Moreover the extent of Sergeant LaChapelle's knowledge of plaintiff and the inferences to be drawn therefrom are but one factor in evaluating the reasonableness of his actions. The reasonableness of both Sergeant LaChapelle's and Officer Brewer's conduct is a call which the jury must make; summary judgment as to these two defendants on this basis must be denied.

Plaintiff also argues that the use of police dogs is unreasonable per se, that is, that *any* use of a police dog in effectuating an arrest is constitutionally unsound. He cites no relevant authority for this proposition, however, and this court is aware of none. Rather, I conclude that the reasonableness of the use of police dogs is to be evaluated in light of all the circumstances surrounding plaintiff's arrest. *Guyton v. Phillips,*

532 F.Supp. 1154, 1162 (N.D.Cal.1981). Cf. *Kerr v. City of Chicago,* 424 F.2d 1134, 1141 (7th Cir.1970). Summary judgment on this ground must also be denied.

### (ii) *Due Process Simpliciter*

As the court noted above, the question of whether plaintiff was being punished at all is dependent upon whether excessive force was used. Since excessive force is simply the obverse of reasonable force, this also is a question of fact for the jury, and plaintiff's motion on this branch of his section 1983 claim must also be denied.

Finally, plaintiff's liberty interest claim in bodily security is also dependent upon whether excessive force was employed. Accordingly, summary judgment on this claim must also be denied.[13]

### 2. *City Defendants' Liability For Events Occurring in the County Jail*

Plaintiff argues that the use of excessive force is not the only injury he suffered at the hands of City defendants. He asserts that they are also liable for the deprivations which occurred at the County Jail. He argues, specifically, that Police Chief Kearns knew or should have known that unconstitutional conditions existed at the jail; thus, he contends, its use to house him pending trial makes the police chief responsible for the constitutional infractions he suffered there.

For brevity's sake I here incorporate my discussion of which constitutional rights are at issue from my analysis of plaintiff's motion for summary judgment against the County defendants. *See* Section VB, *infra.* There I conclude that plaintiff has met the section 1983 requirement of alleging the deprivation of a constitutional right rather than merely tortious harm. I also conclude that major questions of fact exist which preclude the grant of summary judgment;

---

**13.** Because, as I noted, the other City defendants' liability for the events occurring at the time of arrest, is dependent upon whether there was a constitutional violation during the course of that arrest, and I have found that summary judgment cannot be granted on that issue, plaintiff's separate claims against them will not be discussed further. Their cross motions for summary judgment will be discussed *infra* (*See* section VI).

since plaintiff has not carried his burden of proof as to County defendants, it follows he has likewise failed to carry his burden as to City defendants and his motion must be denied.[14]

Plaintiff also argues that the actions of Sergeant LaChapelle and Officer Brewer were "substantial factors in inducing a morbid state of mind" which ultimately resulted in his attempted suicide. As I subsequently discuss in the context of plaintiff's motion relating to the County defendants, plaintiff's motion cannot be granted. Summary judgment as to Police Chief Kearns, Sergeant LaChapelle, and Officer Brewer on these grounds is denied.

### B. County Defendants

Plaintiff seeks summary judgment against the County defendants as it relates to purported violations of his constitutional rights occurring while he was incarcerated as a pretrial detainee in the county jail. He predicates his asserted right to recovery upon an undigested melange of theories and facts, frequently disparate and ill-focused. Broadly, he attacks a variety of regulations and standard practices engaged in by the jail officials. More narrowly, he attacks his removal from a particular cell and his placement in another "isolation" cell; this cell contained a ventilation shaft guarded by a cover which was constructed so as to enable its use as an anchor in suicide attempts. He claims that such covers had been previously used by incarcerated persons to attempt or accomplish suicide, and that it was from this cover that plaintiff hanged himself, sustaining the massive physical injuries from which he presently suffers. As with the previous motion against the City, the court must first undertake to ascertain what is the applicable law, for only then can the court determine what facts are material.

#### (1) The Law

The court again notes that, as presently tendered, plaintiff has limited his assertions to violations of section 1983.[15] To recapitulate, once plaintiff has overcome the threshold problem of demonstrating that activity was undertaken "under color of state law," the second inquiry is whether he has been deprived "of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983.[16] It appears to this court that the

14. Moreover, substantial questions regarding causation remain which can only be resolved by the jury, e.g., whether Police Chief Kearns could have reasonably foreseen that his use of the jail to detain plaintiff would result in the deprivations of his constitutional rights. Hirst v. Gertzen, 676 F.2d 1252, 1263 (9th Cir.1980). This inquiry is generally one reserved for the trier of fact. Arnold v. International Business Machines Corporation, 637 F.2d 1350, 1355 (9th Cir.1981); Lieberman v. Matson Navigation Co., 300 F.2d 661, 662 (9th Cir.1962); Leaf v. United States, 588 F.2d 733, 736 (9th Cir. 1978). Plaintiff's showing is insufficient to establish foreseeability as a matter of law. He points to an article on jail conditions in the Sacramento Bee which he claims put the police chief on notice that his injuries were likely to occur. The question of whether such evidence was sufficient to require the chief first to believe its contents and second to be sufficiently on notice that plaintiff would be subjected to those conditions is a jury question.

15. Again, by virtue of this court's pendent jurisdiction, various state claims have been alleged under the same facts as the court discusses hereinabove in relation to purported constitutional torts. Plaintiff has restricted his motion to his claims under section 1983 and the court in no way intends to pass any judgment as to the viability of any purported state tort claims in its disposition of the instant matters.

16. Identifying the particular interests at stake is, of course, critical. The Supreme Court has repeatedly rejected "the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Due process is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment. And "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake. [citations omitted]." Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (emphasis in original).

Due Process Clause of the Fourteenth Amendment may be implicated by plaintiff's claims. I now turn to an examination of this provision of the Constitution.

### (i) *Due Process Simpliciter*

 It is critical to begin this examination by understanding what this case is *not* about. In his claims against the County defendants, plaintiff does not assert a constitutional violation pertaining to the initial decision to detain him and the curtailment of liberty that such a decision necessarily entails. *See Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Rather, plaintiff's claim is properly characterized as a due process simpliciter claim to be free from punishment pending resolution of his outstanding trial. As I noted above, the Supreme Court has recently squarely held that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979). That is to say, pretrial detainees retain a liberty interest in being free from punishment without due process of law. *Id.* at 545, 99 S.Ct. at 1877. As Mr. Justice Stevens noted, the majority opinion in *Bell v. Wolfish* recognizes that "the source of this fundamental freedom is the word 'liberty' itself as used in the Due Process Clause, and as informed by 'history, reason, the past course of decision,' and the judgment and experience of 'those whom the Constitution entrusted' with interpreting that word." [citations omitted]. *Ibid* at 580, 99 S.Ct. at 1895, (Stevens, J. dissenting).

On the other hand, as the Court also explained, "the Government concededly may detain [a person subjected to arrest and proper detention after a probable cause hearing] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish,* 441 U.S. at 536–37, 99 S.Ct. at 1872–1873. Thus the initial task under the instant claim is one of distinguishing between those conditions whose purpose is to effectuate detention and those conditions which are punitively imposed. That is to say, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 536, 99 S.Ct. at 1872.

Under *Bell,* then, when plaintiff seeks to impose liability for a prison regulation or practice, the initial question tendered by a motion for summary judgment is whether the particular regulation or standard practice is punitive or regulatory in nature.[17] The Supreme Court has taught that the issue of determining the punitive character of a particular disability arising from a regulation or practice of the nature discussed herein turns upon the "intent" of those adopting the regulation or countenancing the practice. "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Bell v. Wolfish,* 441 U.S. at 538, 99 S.Ct. at 1873.[18] Thus, in effect, the Court has held that although intent is not an

---

**17.** In the instant case this issue is, of course, the prime consideration as it relates to the County's entity liability. *See Monell v. New York Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

**18.** The individual jailers' liability is also implicated by the issue of whether the regulation in issue was punitive. They assert that they relied upon the alleged standard practice sanctioned by the jail authorities in performing acts in issue here. Such reliance, if proven and reasonable, would be a factual predicate for an affirmative defense based on good faith and reasonableness. *See Haygood v. Younger,* 527 F.Supp. 808, 822–24 (E.D.Cal.1981). I discuss the individual County defendants' motion for summary judgment *infra.* I pause here only long enough to note that the County defendants

element of a cause of action under section 1983 or a requisite for a violation of the Due Process Clause, *see Parratt v. Taylor,* 451 U.S. at 534, 101 S.Ct. at 1912 and *Haygood v. Younger,* 527 F.Supp. at 812, it is a pertinent inquiry in determining whether a regulation or practice infringes on liberty interests protected by the Due Process Clause. The questions tendered in seeking to resolve this "intent" question are quite different, however, from those tendered by consideration of an individual defendant's intent, because here we consider a legal rather than factual question.

Because the issue is subtle and complex, before I undertake further analysis, I wish to restate it. Under *Bell* a pretrial detainee states a cause of action under section 1983 for a violation of his rights under the Due Process Clause if he has been subjected to punishment. Nonetheless, he may be required to submit to regulations which are non-punitive in character. When he seeks to impose liability upon the governmental agency or individual from which the questioned policy emanated, or which countenanced the policy or practice, the task becomes one of distinguishing whether the practice or regulation (once proved) is punitive or legitimately administrative in character. That question in turn is resolved as a matter of "intent." Nonetheless, as I shall now explain, determining the character of a regulation or standard practice is a legal rather than factual inquiry.

To distinguish between punitive and administrative purposes the Supreme Court has promulgated a three pronged test: whether the regulation serves a legitimate governmental purpose; whether a reasonable relationship exists between the regula-

tion and the purpose; and whether there is an absence of excessive response to the circumstances giving rise to the need for regulations. If a regulation satisfies the three pronged test the court should then ordinarily find that the intent of the regulation is administrative rather than punitive.[19]

It seems clear upon analysis that the "intent" question here is not one of historical fact (a jury question) but of "legislative" intent (a judge question). Although, as I will point out, the determination is record based (i.e., made within a factual context), it is nonetheless legal in character. My reason for so holding is based both on the purpose served in making the determination and the method of resolution. It must be recalled that the purpose of the entire exercise is to determine the constitutionality of a regulation or practice, a legal question— i.e., does the Constitution prohibit X—not did A do X—a historical fact question. It is for the court to determine whether a particular practice or regulation is constitutional vel non, while it is for the jury to determine whether a particular act which violated the constitution occurred.[20] Indeed, it is only in the context of "intent" understood as "legislative intent" that *Bell v. Wolfish*'s three part test as an exclusive set of criteria makes sense. While each of the factors which the court has mandated as the legal test might reasonably be viewed as evidence if the inquiry were one of intent as a historical fact, they cannot be viewed either as conclusive, or for that matter as the only relevant evidence for such an inquiry. Thus, as a historical fact question the effect of the conduct on the victim seems clearly relevant circumstantial evidence in deter-

did not raise the affirmative defense as a basis for their motion. In any event, however, to prevail on summary judgment on this issue (as in the case of the motion for judgment notwithstanding the verdict involved in *Haygood* ) the court would have to conclude that as a matter of law the evidence was capable of only one interpretation, that tendered by the jailors.

**19.** The question of the individual actions of particular jailers, although related to the law-

fulness of the regulations (*see* n. 18), tenders a somewhat different question which will be addressed *infra.*

**20.** As an example, it is for the court to determine whether a regulation permitting whipping is constitutional. It is for the jury to determine whether a particular plaintiff was whipped.

mining the intent of the perpetrator, *see Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *and see Bell v. Wolfish,* 441 U.S. at 538 n. 19, 99 S.Ct. at 1873 n. 19, yet such evidence need not be considered under the *Bell* test. The only conclusion is that the standard enunciated in *Bell* is a test of a "legislative fact," i.e., is the regulation constitutional. Accordingly, a legal question is tendered to be resolved by the court and not by the jury.

The conclusion that the existence of a liberty interest in this context tenders a legal question does not mean, however, that it is not fact oriented. Indeed quite the contrary is true. The Court, at several places in *Bell,* emphasizes the need for a factual record. "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell v. Wolfish,* at 548, 99 S.Ct. at 1878 *quoting* from *Pell v. Procunier,* 417 U.S. 817 at 827, 94 S.Ct. 2800 at 2806, 41 L.Ed.2d 495. *See also Bell v. Wolfish,* 441 U.S. at 539, 99 S.Ct. at 1874. The question that is tendered by plaintiff's instant motion then reduces down as an initial matter to whether this court can determine pretrial whether the regulations and practices at issue are punitive or administrative in character.

### (2) *Resolution of the Motion*

As noted in the Statement of Facts, *supra,* defendants assert that there is a standard practice of segregation of prisoners (whether pretrial detainees or convicts) who have caused a disturbance. Plaintiff apparently asserts that if such a practice exists it is unconstitutional as punitive. Moreover, plaintiff has tendered to the court a document entitled "Rules & Information For Prisoners." That document prohibits "all persons in ... custody" from engaging in various conduct. Without doubt, if plaintiff engaged in the conduct the defendants allege, he was in violation of those rules. Moreover, the document provides for "pun-

ishment" for violation of those rules. It warns that "[t]he following activities are prohibited and may be cause for disciplinary action ... [d]epending upon the circumstances, penalties could include loss of privileges, transfer to a security unit, and/or misdemeanor or felony prosecution."

 I note that the regulations speak in several places of "disciplinary action" and "loss of privileges." To the extent these regulations are "express" manifestations of punitive intent (that is, action taken solely for retribution or deterrence), they are invalid under *Bell.* To the extent these terms allow for actions taken for maintenance of jail security only, they would seem to be constitutionally sound. The question before this court is whether plaintiff was, in fact, transferred to the alleged security cell under regulations permitting such transfers for punitive reasons. To the extent that the terms of the regulations may be viewed as being expressions of intention, they constitute highly persuasive evidence on the issue. Indeed, since plaintiff has met his initial burden of coming forward with evidence on this issue, the duty now devolves upon the County defendants to respond with evidence that the purpose of the regulations were other than punitive. They have failed to do so. Accordingly, the court holds that the regulations, insofar as they permit the punishment of pretrial detainees by transfer to isolation cells, violate the Due Process Clause of the Fourteenth Amendment. Nonetheless, plaintiff's motion for summary judgment cannot be granted. First, a material issue of fact exists as to whether plaintiff was transferred to an isolation cell. Moreover, as I discuss in connection with plaintiff's motion directed to the individual County defendants, there is a material issue of fact as to whether plaintiff was transferred pursuant to the regulation at all. Clearly, if plaintiff was transferred for reasons unconnected with the regulations, he has failed to prove causation within the standards of *Johnson v. Duffy,* 588 F.2d 740

(9th Cir.1978) and *Arnold v. International Business Machines Corporation,* 637 F.2d 1350 (9th Cir.1981). That is to say, the individual County defendants have filed declarations concerning plaintiff's transfer from the tank cell. In those declarations they do not allude to the regulations in question here. Rather, they claim that plaintiff was moved pursuant to a standard practice of the jail to remove any prisoners from a tank cell after he has caused a disturbance or otherwise posed a threat to jail security.[21] Of course, if there is such a standard practice it is a policy or custom within the meaning of *Monell v. New York Department of Social Services,* 436 U.S. at 690, 98 S.Ct. at 2035, and if unconstitutional would render the County liable if applied to plaintiff. *Knight v. Carlson,* 478 F.Supp. 55 (E.D.Cal.1979). I must thus consider whether plaintiff is entitled to summary judgment on this premise.

■ The individual County defendants assert in their affidavits that the reason for the standard practice of removing disruptive prisoners is jail security and the safety of other prisoners. Such a tendered justification, if proven, would demonstrate a legitimate government interest. *See Bell v. Wolfish,* 441 U.S. at 540, 99 S.Ct. at 1874. Certainly, a practice permitting removal of a pretrial detainee from a tank cell after he has caused a disturbance in that cell is a reasonable response given the governmental interest, and the court finds that such a standard practice would be reasonably related to the security interest. Moreover, standing alone, such conduct would not be excessive. Thus, such a standard practice without more would be constitutional and plaintiff's motion as to such a practice must be denied. Nonetheless, a conflict exists between the terms of the regulations and the testimony of individual jailers as to their purpose under the alleged standard practice. A question exists as to whether

plaintiff was removed under the regulations or the alleged standard practice and thus as to the purpose of the jailers. Moreover, as noted *infra,* the motives of the individual jailers are a question of historical fact and thus for the jury. Summary judgment must be denied.

■ Plaintiff, however, also asserts that he was placed in an isolation cell equivalent to solitary confinement. It is unclear as to whether he claims that this is a result of a standard practice, and thus a question of County liability, or only an action attributable to the individual defendants. In any event, the defendants dispute plaintiff's characterization of the cell. A conflict in the evidence thus exists which must be resolved. If indeed the cell was in fact an isolation cell equivalent to solitary confinement—a jury question—a clear question of "excessiveness" is raised which must be resolved by the court as a matter of law. Because the issue is in dispute the court must defer resolution of the question to trial. Because this initial question cannot be resolved on the present record, summary judgment cannot be granted.

■ The claims against the individual jailers who removed the plaintiff from the cell present a somewhat different issue. As I have noted, under *Bell v. Wolfish* a pretrial detainee is entitled to be free from punishment pending a determination of guilt. Under the Supreme Court's current view of the Due Process Clause, whether or not the acts of an individual jailer (as contrasted with a standard practice or regulation) are punitive also turns upon the intent of the jailer. As the Supreme Court observed "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." *Bell v. Wolfish,* 441 U.S. at 539 n. 20, 99 S.Ct. at 1874 n. 20. Here, however, the issue tendered is one of historical fact and is therefore a jury question—that is,

---

**21.** The effect of these declarations on the potential liability of these defendants is discussed *infra.* Here I consider these declarations in

connection with the motion relative to the County and the sheriff.

whether defendants' actions vis-a-vis plaintiff were motivated by feelings of retribution or deterrence. The facts of this case could certainly give rise to a reasonable inference by the jurors that the particular officer's conduct was motivated by either retribution or deterrence (whatever the regulations or policy permit). If such were the case plaintiff would have made out his case of a violation of his due process right to be free from pretrial punishment. Determinations of intent inevitably involve judging the credibility of witnesses and/or drawing inferences from the proven circumstances. As such they are within the province of the jury, *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *The White Motor Company v. United States,* 372 U.S. 253, 259, 83 S.Ct. 696, 699, 9 L.Ed.2d 738 (1963); *Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 326 (9th Cir.1982) and summary judgment thus must be denied. Plaintiff argues, however, that inferences are not at issue in the matter sub judice since one of the deputy sheriffs made life-threatening remarks to him. This evidence, even if uncontested, constitutes no more than persuasive circumstantial evidence of the speaker's frame of mind. Accordingly, it is not conclusive, but must be weighed along with all the other relevant evidence in determining the purpose of the jailors.[22]

Nonetheless, plaintiff argues that he is entitled to summary judgment by virtue of a certain report, "Attachment R," a "Sheriff's Case Summary," apparently written by one Inspector Robertson as to the incident. Plaintiff contends that this evidence conclusively establishes that the decision to remove the defendant was punitive in character. This argument must be rejected. As-

suming arguendo that the report is admissible evidence (generally characterizations of the historical facts by non-percipient witnesses are prima facie hearsay), the conclusions of the report are no more than an opinion. As with any expert's opinion (if such the report is), the jury must determine whether to accept it. *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.,* 444 F.2d 372, 378 (2d Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 (1971).

Plaintiff also argues that even if his isolation were proper, and even if the particular cell was not one which was the equivalent of solitary confinement, his being placed in a cell that contained a ventilator cover from which he could hang himself violated his constitutional rights. As the court understands this issue, it really is composed of two distinct arguments: One, that placing the defendant in such a cell violated his constitutional rights, and two, that the terrible physical injuries that plaintiff sustained by virtue of having attempted to hang himself were a proximate result of the initial violation of his constitutional rights. These are separate issues which I will treat seriatim.

### (ii) *The Condition of the Cell as a Violation of Plaintiff's Constitutional Rights.*[23]

As in the previous discussion, the first effort of the court is to determine whether or not plaintiff's placement in a cell with the physical characteristics in issue can implicate a constitutional interest. The County defendants argue that the absence of a protective screen in plaintiff's cell is no more than a hazardous condition existing on public property; while conceding that such a condition might give rise to tort liability, they argue that no constitutional claim is

---

**22.** Moreover, of course, even if the threat is an admission against the interest of the speaker and, even if admissible against his co-conspirators under Fed.R.Evid. § 801(d)(2)(E), plaintiff has not yet proved the requisite elements for admissibility under that section.

**23.** This portion of the opinion deals with the issue of whether placing a defendant in a cell with the physical characteristics in question can raise an issue of constitutional dimension. As such it relates to all County defendants. The separate question of whether or not any defendant can be liable for the condition is treated separately *infra.*

stated.[24] It appears to the court, however, that the Fourteenth Amendment liberty interest in freedom from unjustified intrusions upon physical security is directly implicated by plaintiff's allegations.[25]

Plaintiff does not plead the physical condition of the cell in isolation. On the contrary, he alleges that he was placed in an isolation cell, with the dangerous condition, when defendants were on notice that just such a condition had led to suicides and attempted suicides. Moreover, he alleges that this occurred after the defendants had framed him for possession of narcotics and thus it was reasonably foreseeable that he would be in a depressed state of mind. The question is whether, on such a showing, the historic liberty interest in being "free from ... unjustified intrusions on personal security," *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) is implicated.

In some ways the issue tendered here is analogous to the problems tendered by claims of convicted persons arising under the cruel and unusual punishment clause. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). As I observed in *Haygood v. Younger,* maltreatment of a prisoner's medical condition does not in itself convert lawful punishment into cruel and unusual punishment for such a risk is "run by every patient whether the patient is in prison or in a penthouse." 527 F.Supp. 808, 821. Nonetheless, a prisoner patient "must rely on prison authorities to treat his medical needs ... it is this necessary reliance which in an appropriate case can transmute deliberate indifference (which in the case of a free person would be no more than tortious conduct) into cruel and unusual punishment." *Id.*

▪ In like fashion, a dangerous condition of public property is a risk of both the detainee and his guard, and thus ordinarily poses no more than a question of tortious conduct. When, however, the condition of public property poses a special risk of grave physical harm peculiar to a prisoner's incarceration and when, because plaintiff is confined at the instigation of the state he must rely on the state to protect him from that very danger, the condition necessarily infringes on the detainee's liberty interest in bodily safety. That is, a pretrial detainee has a liberty interest in a minimally safe cell as measured by the facts peculiar to confinement in general and his confinement in particular. A violation of that interest without the process due gives rise to a cause of action under section 1983.[26] Given plaintiff's allegations, he has alleged a sufficient interest under the Due Process Clause.

▪ Having ascertained a liberty interest protected by the Fourteenth Amend-

---

**24.** Since liability under state law would in any event give rise to a cognizable claim in this court under the doctrine of pendent jurisdiction, disposition of the constitutional claim would not relieve defendants of the obligation of defending the facts at trial since other federal claims remain to be tried against these defendants. Nevertheless of course, the defendants are entitled to elimination of the constitutional dimension purportedly presented by the facts, if none exists.

**25.** The punishment analysis enunciated in *Bell v. Wolfish* (and employed to analyze the County's potential liability in this case for removing plaintiff from his cell) has been employed by at least one court in terms of the physical conditions of the jail. In *Dawson v. Kendrick,* 527 F.Supp. 1252 (S.D.W.Va.1981), the court found that unsanitary plumbing, inadequate lighting,

and conditions giving rise to a fire hazard, all cumulated to lay a factual basis from which an inference of punitive intent could be drawn. It appears to this court that facts such as *Dawson* do permit a "punishment" analysis. The instant case, however, is more readily amenable to a physical security liberty interest analysis.

**26.** Although the court notes above the analogy between the instant claim and a prisoner's Eighth Amendment claim, they are not synonymous. Thus in an Eighth Amendment claim a plaintiff must prove "deliberate indifference" to prevail, *see Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), while a Fourteenth Amendment claim requires no mental component. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *see Haygood v. Younger,* 527 F.Supp. 808, 816 (E.D.Cal.1981).

ment, I next consider what process is due before the State may intrude on that interest. As Mr. Justice Powell has noted, as long ago as the Magna Carta "an individual could not be deprived of this right of personal security 'except by the legal judgment of his peers or by the law of the land. [citation omitted] By subsequent enactments of Parliament during the time of Edward III, the right was protected from deprivation except 'by due process of law.' [citation omitted]." *Ingraham v. Wright,* 430 U.S. 651 at 673 n. 41, 97 S.Ct. 1401 at 1413 n. 41, 51 L.Ed.2d 711 (1979). Indeed in the same case Mr. Justice Powell suggests no intrusions on personal security are ordinarily permitted "short of a trial in a criminal or juvenile court." *Id.* at 674 n. 44, 97 S.Ct. at 1414 n. 44. Thus I hold, consistent with "history, reason, [and] the past course of decisions" (*Ingraham v. Wright,* 430 U.S. at 675, 97 S.Ct. at 1414) that the process due before the state may substantially infringe on the liberty interest right to personal security is a full trial.[27] I have used the word "substantially" deliberately because, as the high court has also taught, "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright,* 430 U.S. at 674, 97 S.Ct. at 1414. Having established that a constitutional right is implicated by plaintiff's claim, I now turn to a consideration of whether his motion for summary judgment can be granted.

 Under the analysis above, plaintiff's motion turns on whether the cell is minimally safe. As evidence of the condition of the cell, the plaintiff offers photographs of the ventilator cover, sans a protective screen. As evidence of foreseeabil-

ity, the plaintiff offers county jail reports relative to other detainees who have used the ventilator cover as an anchor to hang themselves. There appears to be no question that under the circumstances a reasonable jury could find that plaintiff's constitutional rights had been violated by placing him in such a cell. The question is, must they so find so that this court in turn must grant summary judgment. To pose the question as to whether defendants' liability may be resolved on summary judgment is to answer it. Clearly, the question of whether or not the condition of the cell was such as to fail to comport with a standard of minimal safety or whether the danger was no more than de minimis must be evaluated under all of the circumstances, including foreseeability as to this plaintiff. Facts relating to plaintiff's state of mind and whether defendants knew or should have known of his state of mind are in dispute and must be resolved by the trier of fact. Summary judgment must be denied.

### (iii) Miscellaneous Claims

 Plaintiff also alleges a variety of other violations of his constitutional rights. First, he asserts that prior to his removal from the tank, he was housed in an unconstitutionally overcrowded condition. Again, the first issue is whether or not a constitutional violation is alleged. "[C]onfining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment...." *Bell v. Wolfish,* 441 U.S. at 542, 99 S.Ct. at 1875. *See also Lareau v. Manson,* 651 F.2d 96,

---

27. The Court frequently employs the threefold test of *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) in ascertaining the process due; that is, the process due is determined by examining the private interest threatened, the risk of erroneous deprivation of such interest, and finally, the state interest. The employment of the threefold test (like the recourse to the historically sanctioned test this court employs above) would lead to the same result. The interest at stake, as this case illustrates, is of the highest order—the risk of deprivation great—and the state's interest is merely financial. Given this analysis a full trial would be required before the state could intrude on plaintiff's right to physical security.

102–05 (2d Cir.1981); *Campbell v. Cauthron,* 623 F.2d 503, 507 (8th Cir.1980); and *Dawson v. Kendrick,* 527 F.Supp. 1252, 1296–97 (D.C.W.Va.1981). Nonetheless, plaintiff is not entitled to summary judgment on this issue. The statistics plaintiff presents concerning overcrowding, even assuming their admissibility, do not demonstrate that he, individually, suffered unconstitutional privations and hardships. In other words, the record is silent as to how many people Cell 3, North 1 was designed to house, how many people were there incarcerated in relation to that number, what particular hardships he suffered as a result of the alleged overcrowding of his cell, and how long he suffered those hardships. Absent these pertinent facts, the court is unable to determine whether the overcrowded jail amounted to unconstitutional punishment of this particular individual. Accordingly, summary judgment on this ground is denied.

█ Plaintiff also contends that he was denied "his right to a hearing" before his disciplinary transfer to the alleged solitary confinement cell. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See also Clutchette v. Procunier,* 328 F.Supp. 767 (N.D.Cal.1971), *aff'd* 497 F.2d 809 (9th Cir.1974), *modified* 510 F.2d 613 (9th Cir.1975) *rev'sd on other grounds Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). The court believes plaintiff's claim is mischaracterized. Ultimately all the cases plaintiff relies on are inapposite because they define the rights of *convicted* prisoners. Prisoners have been convicted pursuant to a formal adjudication of guilt, and are lawfully subjected to varying degrees of punishment. Plaintiff was a pretrial detainee, incarcerated only as a means of ensuring his presence at trial. As I have repeatedly noted in this opinion, plaintiff, as a pretrial detainee, had a right to be free from punishment before his trial. His contention that he was denied his right to a hearing prior to his cell transfer is but another way of stating he was being subjected to punishment without a formal adjudication of guilt; the "hearing" he is referring to is a criminal trial. *Bell v. Wolfish,* 441 U.S. at 535–37, 99 S.Ct. at 1871–1873. Thus, plaintiff's claims in this regard merge into one that under the totality of the circumstances he was subjected to unconstitutional punishment in violation of the Fourteenth Amendment. As I have just discussed, unresolved issues of fact, regarding the intent of the County defendants and the conditions of the cell to which he was confined, preclude the grant of summary judgment in plaintiff's favor.

Plaintiff also challenges the validity of the jail regulations operative during the relevant time period on grounds other than those discussed above. He contends that the regulations are void for vagueness under the Due Process Clause.[28] He also argues that the regulations delegated to trustees certain "nondelegable duties" under California Penal Code § 4019.5(c). Additionally, they allegedly created the potential for a "kangaroo court" or for "blanket punishment" in violation of California Penal Code § 4019.5(d). Finally, he asserts that the jail regulations failed to notify him of his right to a prepunishment hearing (see above).[29]

The court agrees with plaintiff's general assertion that under the Due Process Clause

---

**28.** Plaintiff submits a copy of the applicable jail regulations as "Attachment D–2" to the amended complaint, filed March 30, 1980. Defendants do not contest their authenticity; therefore, I proceed to decide this portion of the motion on the assumption that the regulations so offered are genuine and were governing at the time the events at issue took place. The jail regulations prohibit assaults on other prisoners, jail staff, or other persons, possession of dangerous weapons, profanity or derogatory remarks to an officer, arguing or shout-

ing, unnecessary noise or profanity in shower rooms, rattling or pounding cell bars, loitering or talking to other prisoners while going to or from quarters, climbing on bars to see outside, shouting to persons outside the jail, throwing items from the windows, passing articles from one cell block to another, and gambling of any nature.

**29.** Although plaintiff alleges that the rules potentially violate the due process rights derived from the California statute, he does not present

a legislative enactment may be found void for vagueness if its prohibitions are not clearly defined. The void for vagueness doctrine is predicated on the notion that a law must give a person of ordinary intelligence an opportunity to know what is prohibited so that he or she may act accordingly. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). A requirement of definiteness ensures against arbitrary action by the enforcers of laws and, in the First Amendment area, ensures that statutes do not have a "chilling effect" on the exercise of those freedoms. *Grayned v. City of Rockford,* 408 U.S. at 108–09, 92 S.Ct. at 2298–2299. While the vagueness doctrine has been applied primarily in the adjudication of statutes which affect First Amendment rights, *see, e.g., Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), it has been applied to evaluate the constitutionality of prison and jail rules which govern imposition of disciplinary measures. *See Laaman v. Helgemoe,* 437 F.Supp. 269, 321–22 (D.C.N.H.1977); *Tate v. Kassulke,* 409 F.Supp. 651, 659 (W.D.Ken. 1976); *Sands v. Wainwright,* 357 F.Supp. 1062, 1090–91 (M.D.Fla.1973), *vacated on other grounds,* 491 F.2d 417 (5th Cir.1973), *cert. denied,* 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771 (1974); and *Landman v. Royster,* 333 F.Supp. 621, 654–56 (E.D.Va.1971). Here again, however, I find plaintiff's claims are subsumed by his claim under *Bell.* He contends, here, that he cannot be *punished* pursuant to vague jail regulations which do not give him reasonable notice of prohibited conduct so as to conform his conduct accordingly; yet, under *Bell* he may not be punished as a pretrial detainee at all. That is, being required to operate

under regulations which plaintiff could not understand constitutes but one more element of the totality of the circumstances amounting to unconstitutional punishment.

Finally, plaintiff raises an argument which is patently frivolous. He argues that his transfer from the tank cell violated his First Amendment rights in that the single cell contained no television. While it is true that prisoners and pretrial detainees retain First Amendment rights even while incarcerated, *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), it has never been held that such rights require that a prisoner or pretrial detainee have access to a television set while incarcerated.

## VI

### CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The City defendants have brought cross motions for summary judgment, arguing primarily that there is an absence of the requisite causation needed to establish liability under section 1983. For the reasons set forth below, the motion must be denied.

■ The essence of the City defendants' argument appears to be that plaintiff has not proved, nor will he be able to prove, the causal links which he must in order to prevail. The lack of evidence produced to support his allegations of causation, they contend, justifies a grant of summary judgment in their favor.[30] The defendants' motion is predicated upon a fundamental miscomprehension of the rules of summary judgment; merely asserting that the other side will be unable to carry its burden of proof is not adequate to merit the disposi-

any factual material demonstrating that in fact these potential violations occurred. Accordingly, this claim will not be considered further in this opinion.

**30.** For example, defendant's Memorandum of Points and Authorities, p. 9 reads, "[t]he plaintiff's complaint and answers to interrogatories are highly conclusory and contain only the barest references to the underlying facts of the

case. Plaintiffs have by no means established the requisite causal relationship between the conduct of Officers Brewer and LaChapelle and Police Chief Kearns." Elsewhere there are frequent assertions to the effect that plaintiff has not made any factual showing and that there is no factual basis to support plaintiff's contentions regarding causation.

tion of questions of fact on summary judgment. Rather, defendants must carry their initial burden on summary judgment, namely, they must show there are no disputed issues of material fact and that they are entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Beltz Travel Service, Inc. v. International Air Transport Association,* 620 F.2d 1360, 1364 (9th Cir.1980). Until they have done so, plaintiff need not come forward with any evidence. *See* Section II, *supra.*

Defendant City of Sacramento has moved for summary judgment on the · same grounds as other City defendants, the lack of causation.[31] Since plaintiff cannot predicate liability solely on respondeat superior, *Monell v. New York Department of Social Services,* 436 U.S. at 690, 98 S.Ct. at 2035, he must demonstrate that the City maintained a regulation, policy, custom or usage, whether express or implicit, which allowed the use of excessive force during the course of the arrest and that this policy caused his harm. *See Knight v. Carlson,* 478 F.Supp. 55, 58 (E.D.Cal.1979). It follows that to prevail on summary judgment the City must affirmatively show the nonexistence of such a regulation, custom, usage or policy; absent such a showing I cannot find that it has carried its burden of proof.[32]

Police Chief Kearns, relying on *Hays v. Jefferson County, Kentucky,* 668 F.2d 869 (6th Cir.1982), *rehearing denied,* 673 F.2d 152, 153 (1982), *cert.* denied, —— U.S. ——, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982), argues that he cannot be held liable because plaintiff has not shown that he, as a supervisory officer, encouraged the specific incident of misconduct or in some other way directly participated in it. *Hays* simply is not the law of this circuit (*see* § VA(1)(a)(iii)); rather, the law of section 1983 causation as applied to supervisorial defendants in this circuit is to be found in *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978) and *Arnold v. International Business Machines Corporation,* 637 F.2d 1350, 1355 (9th Cir. 1981). Thus in the absence of allegations of affirmative acts of misconduct, plaintiff may prove that Police Chief Kearns omitted to perform an act which he is legally required to do and that such omission was a proximate cause of plaintiff's constitutional injury. Plaintiff contends that the police chief failed to properly supervise and train the police officers under his control concerning the use of force in making arrests. In order to prevail on summary judgment, therefore, Chief Kearns is charged with demonstrating that he did indeed train and supervise his officers adequately. Here again, this defendant has presented nothing except the assertion that plaintiff will be unable to prove his case. Having failed to substantiate his claim on the lack of causation, the motion is denied.

Next I consider Sergeant LaChapelle and Officer Brewer's motion; again, I am some-

---

**31.** The court is making its best guess as to what the City's arguments are; counsel originally made the motion on behalf of Police Chief Kearns and Sergeant LaChapelle (*See* Notice of Motion for Summary Judgment, filed December 2, 1982), but argues on behalf of Kearns, LaChapelle, and *Officer Brewer,* in the body of the Memorandum of Points and Authorities. No substantive argument is made on behalf of the City of Sacramento therein. A supplemental Memorandum of Points and Authorities, filed on January 10, 1983, purports to support the motion as made on behalf of *all* the City defendants. Counsel represented to the court in oral argument that the motion was made by every named City defendant; accordingly, I consider the motion as though made by each named City defendant and proceed to fill in the gaps in the argument as best I can.

**32.** As a logical matter of course, no one can prove a negative. Nonetheless the City has the power to prove a factual predicate as to the affirmative, namely, the policies relating to police procedure during arrest. Put simply, for instance, defendants could have demonstrated what the City's policies relative to arrest were. If the policies prohibited the use of excess force, plaintiff would have been required to come forward with his evidence. Because defendants have not laid a proper factual predicate, plaintiff has no such obligation and the City's motion must be denied.

what at a loss as to precisely what is being argued. Sergeant LaChapelle argues that he is a supervisor and hence cannot be held liable "absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it," again, citing *Hays.* Yet as I understand plaintiff's contentions, he alleges both that LaChapelle was guilty of faulty supervision and that LaChapelle inflicted excessive force himself. (LaChapelle is alleged to have kicked the plaintiff unnecessarily). Regardless of which theory is in issue, summary judgment must be denied.

Assuming plaintiff is proceeding on a supervisorial theory, the analysis which I have just explicated with regard to Chief of Police Kearns would apply. That is, in order to negate causation Sergeant LaChapelle would have to prove that he did *not* fail "to perform an act which he is legally required to do that causes [plaintiff's] deprivation" or that he did *not* set "in motion a series of acts by others which [he knew] or reasonably should [have known] would cause [Officer Brewer] to inflict the constitutional injury." *Johnson v. Duffy,* 588 F.2d at 743–44. To the degree that a jury were to find that Brewer's release of his dog was unreasonable and Brewer was under LaChapelle's supervision, they could reasonably find that he failed to supervise Brewer. In any event the motion is devoid of factual support and must be denied.

As to direct participation as a basis for LaChapelle's liability, summary judgment must also be denied. This opinion's discussion of plaintiff's motion for summary judgment explicates the applicable law and applies to defendant LaChapelle's and Officer Brewer's mirror motion as well. Clearly a reasonable jury must find that the actual perpetrators of an allegedly unconstitutional act, *i.e.,* those who applied excessive force, if proved, are the cause of that act. Summary judgment on causation as to these two defendants is denied.

Although not evident in its Memorandum of Points and Authorities, the City defend-

ants at oral argument appeared to make the additional argument that the force employed in plaintiff's arrest was reasonable as a matter of law. In other words, they wish me to rule that no reasonable person could find that the force utilized by Sergeant LaChapelle and Officer Brewer during the course of the arrest was excessive; I cannot do so. Assuming arguendo that defendants' version of the facts are entirely true, differing conclusions could be drawn about the force applied. Reasonable people might decide, for instance, that defendants should have warned plaintiff that they would release the dog before they did so; reasonable people might find the use of a dog excessive unless the plaintiff was actually fleeing, or that Sergeant LaChapelle or Officer Brewer did not properly supervise the use of the dog. In sum, where there are competing reasonable conclusions to be drawn, the question of the use of unnecessary force must go to the jury. (*See* Section V(b)(i), *supra,* and the cases cited therein).

Finally, City defendants argue that they were not the cause of plaintiff's attempted suicide. Plaintiff contends that the City defendants were substantial factors in bringing about the mental condition under which he attempted to commit suicide. As I will explain in connection with the County's motion, plaintiff's version of the facts may present a viable claim that the constitutional violations in question were proximate causes of his attempted suicide and consequent injuries. Assuming, arguendo, that plaintiff succeeds in convincing the jury that his attempted suicide was caused by constitutional violations, City defendants may nonetheless avoid liability for the damages incurred as a result of the attempted suicide in two ways; first on a theory of attenuation and, second, on a theory of intervening independent cause. I turn briefly to both issues.

To the degree that plaintiff seeks to predicate liability for his physical injuries on the alleged constitutional violations oc-

curring at the time of arrest, the City defendants may prove that the chain of causation has become so attenuated that it is excused from liability. That is to say, the City may be able to prove that those acts were *not* substantial factors in bringing about the suicide because their actions, assuming they were wrongful, were so remote that they could not have been part of the inducement of plaintiff's state of mind. *Martinez v. California,* 444 U.S. 277, 284–85, 100 S.Ct. 553, 558–559, 62 L.Ed.2d 481 (1980). The primary inquiry here is whether plaintiff's injury was reasonably foreseeable. *Hirst v. Gertzen,* 676 F.2d 1252, 1263 (9th Cir.1982). Given the question, however, it seems clear that summary judgment must be denied. A reasonable trier of fact could find that plaintiff was still suffering from the mental trauma of having been bitten by a police dog and unnecessarily kicked and that those occurrences were a contributing cause of the state of mind that resulted in his attempted suicide. Accordingly, the question remains for resolution by the jury. *Leaf v. United States,* 588 F.2d 733, 736 (9th Cir.1978).

The City defendants may also be excused from liability if the actions of the County defendants constituted an intervening superseding cause of plaintiff's damages. Traditional tort analysis dictates that another defendant's actions may constitute an intervening superseding cause of plaintiff's injury and thus break the chain of causation so as to relieve the initial actor of liability if the latter defendant's actions were *unforeseeable.* Prosser, *Law of Torts,* 281–86 (4th Ed.1971). Courts in civil rights cases have generally followed this approach. *See Hoffman v. Halden,* 268 F.2d 280, 296–97 (9th Cir.1959) (where gravamen of the injury is commitment to an institution by court order, the order of the court rather than defendant's acts in initiating proceedings, is ordinarily the proximate cause of the injury), and *Smiddy v. Varney,* 665 F.2d 261, 266–68 (9th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982) (police officer's misconduct is ordinarily not the proximate cause of damages suffered after the prosecutor files a criminal complaint absent a showing that the prosecutor did not exercise independent judgment). In accord, *Ames v. United States,* 600 F.2d 183, 185 (8th Cir.1979); *Dellums v. Powell,* 566 F.2d 167, 192 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), *reh'g denied,* 439 U.S. 886, 99 S.Ct. 234, 58 L.Ed.2d 201 (1978); *Rodriguez v. Ritchey,* 556 F.2d 1185, 1193 (5th Cir.1977) (en banc), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978). *See also Duncan v. Nelson,* 466 F.2d 939, 942–43 (7th Cir.1972), *cert. denied,* 409 U.S. 894, 93 S.Ct. 175, 34 L.Ed.2d 152 (1972) (defendant police officers, who allegedly elicited an involuntary confession from plaintiff resulting in his conviction on murder charges, were not the proximate cause of damages incurred as a result of his incarceration and conviction because it was unforeseeable that the trial judge would admit such inadmissible evidence); and *Jackson v. Dillon,* 518 F.Supp. 618, 622 (E.D.N.Y.1981) (assuming that defendant detective and police officer knowingly took plaintiff's statements and confession in an involuntary manner, the prosecutor's determination to offer them at trial and the trial judge's decision to admit them are intervening causes sufficient to preclude finding defendants liable).

Two different questions are posed: one relates to whether the City defendants may be held liable for unconstitutional conduct in the county jail, the other relates to whether City defendants may be held as a joint tortfeasor for the injuries sustained in plaintiff's attempted suicide. As to the first question, plaintiff asserts as a fact that the unconstitutional conditions of the county jail were so well known and widely publicized that the City defendants knew or should have known of them. From this premise he reasons that since those defendants had a constitutional duty to refrain from a course of conduct which would lead to the imposition of a deprivation of his constitutional rights, their placing him in the county jail was a "cause" of his injury

under the applicable Ninth Circuit test. In the cases cited above, the issue was the unconstitutionality of the commitment or some other occurrence which followed the defendants' conduct, and which the court found was unforeseeable. Here plaintiff argues, however, that the conditions in the jail constituted a separate and distinct constitutional violation from that suffered at arrest but, unlike the cases relied upon by the City defendants, were as a matter of fact known, and thus the constitutional violation was not only foreseeable but inevitable. Clearly this claim distinguishes the instant case from those noted above. The conditions in the jail and the degree of knowledge concerning the conditions of the county jail are disputed by plaintiff and City defendants. It is for the jury to determine whether defendants' conduct under these circumstances was a cause of the violation of plaintiff's rights alleged to have been suffered in the county jail.[33] For reasons to be discussed *infra* in connection with the county's motion for summary judgment as it pertains to the attempted suicide as an intervening cause, the City's motion must also be rejected.

In summary, City defendants' motion for summary judgment is denied. The City of Sacramento has failed to demonstrate the nonexistence of an express or implicit regulation, usage, custom or policy condoning the excessive use of force, nor has it demonstrated either that unconstitutional conditions did not prevail at the county jail, or that if they did the City defendants were reasonably unaware of them. Police Chief

Kearns has failed to demonstrate that there was no omission on his part which caused plaintiff's injuries; as to Sergeant LaChapelle and Officer Brewer material issues of fact relating to the circumstances of arrest preclude summary judgment. To the extent plaintiff is attempting to hold Sergeant LaChapelle liable on a supervisorial theory, the Sergeant has failed to negate allegations of his acquiescence in the allegedly unconstitutional acts. Additionally, I find that the question of the reasonableness of the force exercised is disputed. The question of whether City defendants could have reasonably foreseen that their actions would contribute to plaintiff's mental condition which in turn would result in his attempted suicide, whether they knew of the unconstitutional conditions of the county jail, and whether County defendants' actions were unforeseeable so as to constitute a superseding intervening cause relieving them of liability must all be decided by the jury.

## VII

## COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

County defendants' motion is primarily predicated on two arguments. First, they contend that no constitutional violations occurred at the jail; specifically, they assert that transfer to a single cell was undertaken for the legitimate purpose of jail security rather than for punitive motives.[34] Second, they argue that they were not the

---

**33.** County defendants have joined in City defendants' motion for summary judgment on the grounds discussed above. The arguments and issues raised by the City defendants are largely irrelevant to County defendants' liability. County defendants' motion for summary judgment based on arguments raised by City defendants is therefore denied.

**34.** County defendants also argue that the search of plaintiff was nonpunitive and therefore violated no liberty interest under *Bell.* While searches of pretrial detainees as a general matter have been upheld by the Supreme Court as rationally related to institutional se-

curity, *Bell v. Wolfish,* 441 U.S. at 558–60, 99 S.Ct. at 1884–1885, searches, if undertaken in an abusive manner amount to unconstitutional punishment. *Id.* at 560, 99 S.Ct. at 1885; ("... on occasion a security guard may conduct the search in an abusive fashion ... Such an abuse cannot be condoned. The searches must be conducted in a reasonable manner."). Plaintiff has not made the argument that the search vel non violated his constitutional rights; I thus need not consider this issue in detail. At this point it suffices to state that, as analyzed in detail throughout this opinion, substantial jury questions are tendered regarding punitive intent, causation, and the existence of a county

proximate cause of plaintiff's attempted suicide because they had no reason, based on plaintiff's conduct, to foresee that he would try to hang himself, or alternatively that in any event plaintiff's conduct was an intervening independent cause, breaking the chain of causation. I will address these issues seriatim.

█ First, I address County defendants' argument that no constitutional right of plaintiff has been violated; specifically, they argue that the transfer of plaintiff from the tank cell to a single cell was not done for retaliatory reasons and so did not constitute punishment under *Bell.*

As evidence of their lack of punitive intent, the individual County defendants Waters, Hasapis, and Thomas offer their affidavits stating that the sole reason they transferred plaintiff from the tank to the single cell was for security purposes. They specifically deny any intention to punish plaintiff. At the risk of being repetitious, I note again that questions relating to state of mind are factual inquiries which of necessity nearly always must be determined by the trier of fact. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 326 (9th Cir.1982).[35] Thus, defendants' declarations, while some evidence, are insufficient to prove their state of mind as a matter of law; rather, the jury must be given an opportunity to evaluate their credibility under all the circumstances.

Defendants argue that the transfer of plaintiff from the tank cell to a single cell was done to preserve the security of the institution only; as such they assert it must be deemed "administrative segregation" and thus not punitive nor compensable. In *Hewitt v. Helms,* —— U.S. ——, ——, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983) the Supreme Court held that due process protections attach only when a state statute or regulation has created a liberty interest in remaining in the general prison population, as contrasted to the more restrictive conditions of "administrative segregation."[36] Here, however, the issue tendered is not whether plaintiff had a right to be within the general population as an abstract matter, but whether defendants intended to punish plaintiff by moving him. Any deprivation resulting therefrom (whether cognizable as a right or privilege, or mere state of being) would then be an unconstitutional deprivation of a pretrial detainee's right to be free from punishment compensable under section 1983.

The County and the Sheriff have likewise moved for summary judgment but have failed to articulate precisely what argument would support the granting of their motion; instead they generally assert that none of plaintiff's rights have been violated. However, as I have extensively discussed in Section V, *supra,* several of plaintiff's constitutional rights have indeed been implicated. Briefly put, I have found first that plaintiff's liberty interest in being free from

policy or custom which must be resolved at trial. The manner of the search in issue clearly bears on these questions.

**35.** Indeed, given the fact that defendants' own regulations speak in terms of punishment, but for the contrary declarations of the individual jailers, plaintiff's motion on this issue would have to be granted.

**36.** Although the Court recognized that in the case before it the conditions imposed on the prisoners under the label of "administrative segregation" were much the same as those imposed under the label of disciplinary solitary confinement, nonetheless the Court found that

due process required, at most "... an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time *after* confining him to administrative segregation." *Hewitt v. Helms,* —— U.S. at ——, 103 S.Ct. at 872 (emphasis added). If defendants ultimately prove at trial that their motives were purely nonpunitive (see below), *Hewitt* would seem to compel the conclusion that in the absence of a state law provision, plaintiff had no right to a hearing before the transfer. *But see Wright v. Enomoto,* 462 F.Supp. 397 (N.D.Cal. 1976), *aff'd,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978).

preconviction punishment may be implicated by his transfer from a tank cell to a single cell under the regulations in question. Additionally, I have determined both that plaintiff has a constitutional right to a minimally safe cell and that his liberty interest in physical integrity may be implicated by his incarceration in a cell with the physical configuration in issue. In that same vein, however, I have also concluded in connection with plaintiff's motion that questions of fact remain which must be evaluated in light of all the circumstances by the jury. The same questions of fact which preclude the grant of plaintiff's motion likewise preclude the grant of defendants' motion. The evidence tendered by the parties does no more than enable me to outline the issues which must be addressed at trial.

Next I address County defendants' argument that they were not the proximate cause of plaintiff's attempted suicide. They argue they had no warning that plaintiff's mental condition was such that he would attempt suicide. First I must distinguish between the showing required to "cause" a constitutional violation under section 1983 from that which would be required to recognize that the injuries arising from the attempted suicide are consequential damages flowing from the constitutional violation and thus compensable.

I have repeatedly noted this circuit's standards for resolution of whether a particular defendant "caused" a constitutional violation within the meaning of section 1983. This court held above that a reasonable jury might find under that standard that the county's maintenance of single cells under the circumstances demonstrated by plaintiff's evidence was a cause of a

violation of plaintiff's "liberty" interest in bodily integrity without due process of law. In like fashion, if the county maintained regulations, or condoned a practice, usage or custom which permitted pretrial punishment of detainees, it would be a cause of plaintiff's constitutional injury if he was subjected to such punishment. Finally, it seems self evident that the actual actors, in placing plaintiff in the cell, or any other way of punishing him, if proven, would be a cause of the constitutional violation suffered.[37] Since questions of fact abound as to each of these issues (see above), summary judgment must be denied.

The more urgent aspect of defendants' motion appears to be their assertion that in no event may they be held liable for such damages as plaintiff may claim for the horrendous physical consequences of his aborted suicide. That is to say, defendants argue that conceding the worst case scenario from defendants' point of view, namely that plaintiff proves a constitutional violation and defendants' responsibility therefor, plaintiff's attempted suicide is an intervening independent cause of that injury and they are entitled to have this court so declare. To resolve the issue tendered by the motion requires the court to determine what damages are compensable under section 1983, and by what legal standard they are ascertained.[38]

■ A fundamental aim of section 1983 is "to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus,* 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). The Supreme Court has taught that section 1983 created "a species of tort liability in favor of persons who are deprived of rights,

---

**37.** I have already noted that the County employees may have an affirmative defense based on reasonable reliance on County regulations to defeat personal liability. But clearly this too is a jury issue. The affirmative defense is based both on "good faith" and "reasonable" reliance—both jury questions. *See Haygood v. Younger, supra.*

**38.** Because counsel have not raised the issue, the matter of punitive damages is not discussed. *See e.g., Gregory v. Thompson,* 500 F.2d 59 (9th Cir.1974) (permitting award of punitive damages against individual defendants); *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (municipality not subject to punitive damages for civil rights violations).

privileges or immunities secured to them by the Constitution [citations omitted]." *Id.* at 253, 98 S.Ct. at 1046. Accordingly, it is wholly appropriate to employ as a "starting point" for the inquiry as to what damages are compensable, the standards of causation, and the "set of rules" developed over the centuries in the "common law of torts." *Id.* at 257, 98 S.Ct. at 1048. *See also City of Newport v. Fact Concerts Inc.,* 453 U.S. 247, 259–66, 101 S.Ct. 2748, 2755–2759, 69 L.Ed.2d 616 (1981) (tracing common law of municipal immunity from punitive damages). Thus, where the claims in section 1983 cases protect interests which parallel those protected by common law actions, the principles of the common law action are directly applicable to the constitutional tort. Where, however, "the interests protected by a particular constitutional right" do not find analogous protection in the "common law of torts," the task is "one of adapting common law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right." *Carey v. Piphus,* 435 U.S. at 258, 98 S.Ct. at 1049. As Mr. Justice Harlan explained, this principle extends both to "causation and [the] magnitude of injury." *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 409, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619 (1971) *cited with approval in Carey v. Piphus,* 435 U.S. at 259, 98 S.Ct. at 1050. The task, then, is to define the "rules governing compensation for injuries caused by the deprivation of constitutional rights. [Those rules] should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law." *Carey v. Piphus,* 435 U.S. at 259, 98 S.Ct. at 1050.

With these general principles in mind I turn to the County defendants' contention (joined by the City defendants), that whatever else is true, plaintiff's own attempted suicide is an independent intervening event which breaks the chain of causation and thus frees them from liability for his present physical and mental condition. Because *Carey* teaches that questions of causation must be examined in light of the particular constitutional right plaintiff claims is breached, I now turn to a discrete examination of the claims.

1. *The Due Process Right to Bodily Integrity and Security.*

Without again rehearsing it in detail, plaintiff's claim against the sheriff and the County as an entity is that they maintained a cell providing means for attempted suicide when he and it knew, or should have known, that others had tried or succeeded in killing themselves using those very means. I have found that such a claim constitutes a potential claim of a violation of plaintiff's liberty interest in the integrity and safety of his body. As to the individual County defendants, plaintiff claims that their combined conduct which resulted in his being placed in that cell likewise constituted an infringement on that same right. Relative to the City and the City defendants, plaintiff claims each knew or should have known that such a constitutional violation would occur because the conditions of the jail were so well known. Finally, plaintiff claims that the individual acts of commission and omission of each combined to produce a morbid state of mind leading to his attempted suicide. It is his further contention that these violations of his liberty interest without due process were a legal cause of his injury. Defendants argue that as a matter of law plaintiff's intervening act of attempted suicide broke the causal chain and they cannot be held liable for his present mental and physical condition. Defendants' motion must be denied; both applicable federal law and principles of common law provide that the issues tendered by the parties' contentions are factual in character and thus for the jury.

In *Hirst v. Gertzen,* 676 F.2d 1252 (9th Cir.1982), this circuit's court of appeals reversed a district court's determination

that no triable issue of fact was presented by a section 1983 suit where plaintiff alleged that defendants negligently hired and supervised a deputy sheriff leading to a death by suicide. Although the court did not specifically address the question of the decedent's act in committing suicide as an intervening act, clearly there would be no issue of fact to try if, as a matter of law, a suicide must be so characterized. While *Hirst* provides no specific guidance as to how this issue is to be resolved, resort to the "common law of torts" does provide a standard.[39]

The late Dean William Prosser, in his authoritative work, describes the analogous common law doctrine as follows:

> Some difficulty has arisen in cases where the injured person becomes insane and commits suicide. Although there are cases to the contrary, it is the prevailing view that when his insanity prevents him from realizing the nature of his act or controlling his conduct, the suicide is to be regarded as a direct result, and no intervening force at all, or else as a normal incident of the consequences inflicted, for which the defendant will be liable. The situation is the same as if he should hurt himself during unconsciousness or delirium brought on by the injury. But if the man is sane, or if the suicide is during a lucid interval, when he is in full command of his faculties, but his life has become unendurable to him by reason of his injury, it is agreed in negligence cases that his voluntary choice is an abnormal thing, which supersedes the defendant's liability. A recent English decision, recognizing that the neurosis and depression brought about by the original injury may still be the producing cause, has al-

lowed recovery even in the latter case. [n. 77 Where the tort is intentional, recovery has been allowed . . .]

W. Prosser, *Law of Torts* 280–81 (4th Ed. 1971) (other footnotes omitted). *See also* Restatement (Second) *Torts* § 455 (1977). Thus, under the common law, defendants' liability turns on plaintiff's state of mind at the time of his attempted suicide.

As noted, Prosser opines that a suicide does not constitute a superseding cause when "the nature of his insanity prevents [plaintiff] from realizing the nature of his act or controlling his conduct." The Restatement casts the requirement as being one of "insanity" or "delirium." Restatement (Second) § 455. As society's sophistication about mental states elaborates, however, the standard for the requisite mental state sufficient to break the chain of causation has become more flexible.[40] Thus Prosser notes that in England mere neurosis and depression is sufficient. Prosser, *supra* at 281, *citing Pigney v. Pointers Transport Service,* 2 All Eng.Rep. 121 (1957) 122 (1957). This appears to be the trend of the common law. In California, for instance, any "mental condition which results in an uncontrollable impulse to commit suicide" will suffice. *Grant v. F.P. Lathrop Construction Co.,* 81 Cal.App.3d 790, 796, 146 Cal.Rptr. 45 (1978). *See* the cases from the various states collected at p. 798, 146 Cal.Rptr. 45 of the *Grant* opinion. Although the standard has been expressed in various ways, this court is particularly impressed with both the *Grant* court's holding and its reasoning. As that court notes, the key to determining a break in the causational chain is whether plaintiff's act was volitional. It follows, then, that any mental state, however characterized, which negates

---

**39.** The court has been able to discover only three other section 1983 cases which deal with a jail suicide; *Espino v. City of Kingsville, Texas,* 676 F.2d 1075 (5th Cir.1982); *Moomey v. City of Holland,* 490 F.Supp. 188 (W.D.Mich. 1980) and *Christian v. Owens,* 461 F.Supp. 72 (W.D.Va.1978). Unfortunately, none of these cases shed light on the issue discussed in the body of the opinion.

**40.** It is now clear that in ascertaining the damages recoverable under section 1983, it is proper to consider the present state of the common law, and not merely the law as it existed at the time section 1983 was enacted. *See Smith v. Wade,* —— U.S. ——, —— n. 2, 103 S.Ct. 1625, 1628 n. 2, 75 L.Ed.2d 632 (1983).

a volitional state would not break the causal chain. That is to say, plaintiff's attempted suicide, if the result of a mental condition proximately caused by defendants' violation of his constitutional rights, which condition prevents him from realizing the nature of his act or controlling his conduct, constitutes an intervening (i.e., one cause) but not a superseding (i.e. sole cause) of plaintiff's injury and thus does not, as a matter of law, break the chain of proximate cause. On the other hand, if at the time of the attempted suicide plaintiff was able to appreciate the nature of his act and able to control his conduct, but chose freely to attempt suicide, defendants would not be liable for the injuries sustained by virtue of the attempted suicide. In the final analysis, then, the issue of causation here must be resolved on the basis of plaintiff's state of mind at the time of the suicide attempt.

Having concluded that causation turns upon plaintiff's mental state, given the present record it becomes clear that the issue cannot be determined on summary judgment. Plaintiff argues that defendants induced "a morbid state of mind" bringing about an uncontrollable impulse to commit suicide. As I have repeatedly noted in this opinion, mental states are singularly inappropriate for disposition on summary judgment. *Consolidated Electric Co. v. United States for the Use and Benefit of Gough Industries, Inc.,* 355 F.2d 437, 438–39 (9th Cir.1966), ("When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment ...". It remains for the jury to determine the state of plaintiff's mental condition at the time of the attempted suicide and to determine whether it was an independent, intervening cause of his injury or but one cause in addition to defendants' violation of his constitutional rights, if proven. Accordingly, defendants' motion for summary judgment must be denied.

Defendants' motion based upon their assertion that plaintiff's attempted suicide was unforeseeable must also be denied. In order to prevail on summary judgment on a foreseeability question, defendants must demonstrate the absence of foreseeability so clearly that reasonable people could not differ as to its absence. As evidence of this, County defendants offer the affidavits of the individual deputy sheriffs in which they assert that plaintiff exhibited no signs of depression or despair during the period between the initial disturbance and his transfer to the single cell. This evidence is insufficient to carry their burden on summary judgment. As with the declarations concerning punitive intent, plaintiff is entitled to have the jury evaluate the credibility of the individual deputy sheriffs on the witness stand. Moreover, in the final analysis, foreseeability is a conclusion drawn from all the circumstances and thus for the jury to determine. *Leaf v. United States,* 588 F.2d 733 (9th Cir.1978). Certainly if plaintiff were to prove his allegations, a reasonable jury might well conclude that plaintiff's attempted suicide was foreseeable.

### 2. The Due Process Right to be Free From Pretrial Punishment.

The court has noted that if plaintiff was placed in a solitary confinement cell as punishment for his behavior while a pretrial detainee, he will have proven a violation of a liberty interest protected by the Fourteenth Amendment. Accordingly, he will be entitled to compensation for all "injuries caused" thereby. *Carey v. Piphus,* 435 U.S. at 247, 98 S.Ct. at 1048. This court can discern no reason for treating the right to be free from pretrial punishment in any fashion different from the right of bodily integrity. Both constitute liberty interests protected by the identical provisions of the Fourteenth Amendment. Violation of either interest without due process, therefore, should be compensated in the same manner and to the same extent. As noted, under the present record, whether plaintiff's present condition is a consequential result of the violation of his constitutional right is an issue for the jury and summary judgment must be denied.

Finally, I turn to the one defendant's motion which may be granted. Defendant Fidler has established by declaration that his sole participation in the events at the jail was to observe plaintiff reaching for something in the commissary cart and to call for help when the resulting disturbance ensued. Plaintiff, however, directs this court's attention to "Attachment U," a report of the incident with trustee Beuttner, written by defendant Fidler; in that report, the defendant summarizes the facts and recommends "two weeks loss of all privileges." This report, plaintiff argues, establishes defendant Fidler's punitive intent; alternatively, he points to minor discrepancies between the report and defendant's declaration, asserting that these discrepancies raise a triable issue of fact which must be decided by the jury. I am unpersuaded by plaintiff's contentions.

The Supreme Court has not held that the mere existence of punitive intent alone constitutes a violation of due process; rather, it has held that the imposition of a particular disability with punitive intent infringes upon the rights of pretrial detainees. *Bell v. Wolfish,* 441 U.S. at 536, 99 S.Ct. at 1872–73. In short, then, there must be some action taken or some injury suffered as a result of the punitive intent. It is with respect to this element that plaintiff has failed to raise a triable issue of fact.

The report, while it may contain some minor discrepancies when compared with defendant Fidler's declaration, simply does not contradict the fact that his sole participation in the events which allegedly violated plaintiff's constitutional rights consisted of calling for help when confronted with a potentially dangerous situation. A request for assistance in such a situation is undeniably rationally connected to a legitimate purpose, that of jail security. *Bell v. Wolfish,* 441 U.S. at 538, 99 S.Ct. at 1873. Moreover, it is evident from the content of the document that it was written sometime after the allegedly unconstitutional transfer of plaintiff to a single cell and in all probabili-

ty after plaintiff attempted to hang himself. Thus even if the report was written with punitive intent, it simply did not lead to the constitutional deprivations of which plaintiff complains, or the physical injuries he asserts were proximately caused thereby. It did not, because it could not, as they had already occurred.

Plaintiff also argues that defendant Fidler's call for help may have been a pretext, disguising his true motives and setting into progress the chain of events herein at issue. The answer to this contention is that there is simply no evidence in the record to support it. Certainly Exhibit "U" supplies no support for such an assertion.

In sum, plaintiff has failed to raise a triable issue of fact as to whether defendant Fidler engaged in any unconstitutional behavior.

The court finds that defendant Fidler has established the absence of any causation of plaintiff's injuries by his conduct as a matter of law; *i.e.,* based on the undisputed facts, no reasonable jury could find that he committed an affirmative act, participated in another's affirmative acts, or omitted to perform acts which he was legally required to do which resulted in plaintiff's injury. *Johnson v. Duffy,* 588 F.2d at 743–44. In terms of proximate cause, no reasonable trier of fact could find that defendant Fidler's actions of observing plaintiff and calling for help would foreseeably result in plaintiff's injuries. *Arnold v. International Business Machines Corp.,* 637 F.2d at 1355. Accordingly, defendant Wayne Fidler's motion for summary judgment is granted.

CONCLUSION

After this long and difficult examination the court has determined that the motion for summary judgment brought by each party except for County Defendant Fidler, must be denied. Nonetheless, the court does not believe this arduous labor of reviewing the law pertinent to this case has been in vain. The issues in section 1983

litigation are complex, subtle and difficult. This opinion enunciates this judge's understanding of the pertinent law and thus will provide counsel with an outline of the law to be applied in the upcoming trial.

The court feels compelled to make some comment on the law. I noted above that section 1983 litigation is subtle, complex, and difficult. Indeed, it is so much so that the best of practitioners may easily be led astray much less the average practitioner or a work-a-day judge like this writer. When the law is so elaborate that a court must devote this much time and effort to the essentially simple claims of this case, something has gone seriously awry.

There is nothing inevitable about the present state of the law. It is the result of the Supreme Court's elaboration of test upon test, in what appears to be an almost infinite regression. The drafters of the Fourteenth Amendment meant to create a charter of liberty, and the Congress in section 1983, provided a means of enforcement. The present state of the law cannot be said to advance those aims. Unjustly accused defendants are also entitled to quick vindication. The finely drawn distinctions I have examined above do not truly advance that aim either. Rather, law that is as difficult to apply as that discussed in this opinion, practically ensures litigation, appeal and more litigation. What is required is not that judges more crudely apply settled principles but a simplification of those principles, to more fully achieve the purposes of the law. The Ninth Circuit, like this court, is bound by the law of the land as interpreted by our Supreme Court. It is to that Court that this plea is directed.

IT IS SO ORDERED.